**Keith Wayne FLOURNOY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 597–83.**

Court of Criminal Appeals of Texas, En Banc.

Feb. 15, 1984.

---

Larry M. Thompson (court appointed on appeal only), Fort Worth, for appellant.

Tim Curry, Dist. Atty., C. Chris Marshall and Gary L. Medlin, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

TEAGUE, Judge.

The State, through the petition for discretionary review that was filed by a member of the staff of the Hon. Tim Curry, District Attorney of Tarrant County, challenges the correctness of the holding that the Fort Worth Court of Appeals made in *Flournoy v. State*, 650 S.W.2d 526 (Tex.App.1983), which was that the evidence was insufficient to sustain the attempted burglary of a habitation conviction of Keith Wayne Flournoy, who is the appellant in this cause. We agree with the State that the evidence is sufficient to sustain appellant's conviction. The judgment of the Court of Appeals will therefore be reversed and the cause remanded to that Court for it to consider appellant's grounds of error which have not yet been reviewed.

The evidence reflects that Lyndia Conley, the complainant, resided in a mobile home in a rural area of Tarrant County. Conley testified that at approximately 9:00 a.m. on the day in question, while watching television, she saw appellant, who was accompanied by an unidentified passenger, drive his motor vehicle into her driveway, park the vehicle, get out of the vehicle, and commence walking toward the front of her mobile home. The passenger remained inside of the vehicle. This was the first time that Conley had even seen either appellant or his passenger.

While appellant was walking toward her mobile home, Conley got up from her chair, turned off the television set, went and checked both the front and back doors of her residence to make sure that they were locked, which she found they were, and then placed herself in a position whereby her field of vision encompassed appellant, his vehicle, and the passenger that was in appellant's vehicle. However, neither appellant nor his passenger were able to see from the front of the mobile home what was inside because the window to the front door resembled a "one-way-mirror," in that some type of substance had been placed on the window of the front door, thereby enabling one on the inside of the mobile home to see outside, but preventing persons on the outside from seeing inside the home.

Conley testified that appellant walked to the front of the mobile home. He then commenced hitting or striking with his hand or fist a metal strip that was attached to the mobile home. This caused a loud noise. However, Conley did not respond to appellant's "knocking." After appellant did not receive any response, he returned to his automobile, where he spoke briefly with his passenger, after which the passenger immediately got out of the vehicle and proceeded to the rear of the mobile home, where he attempted to look inside of the mobile home through a rear window. However, because the window was too high from the ground, his efforts to see the inside of the mobile home were for naught. He then returned and got back inside of appellant's vehicle.

Conley further testified that after the passenger went to the rear of the mobile home, she then saw appellant return to the front of the mobile home, where he "proceeded trying to unlock the door ... his hands were moving like he was trying to—like a screwdriver or something, like he was trying to get into something." Conley also testified: "The screen door was closed, and he was trying to—going through the screen door, trying to get to the main door ... I was watching, as he kept moving his hands, like he was trying to open the [front] door."

Conley, after forming the opinion that appellant "was getting ready to come into the house," got a loaded .410 shotgun, af-

ter which she placed herself directly behind the front door. She then opened the door. Appellant, who was then standing directly in front of the doorway to the mobile home, was told by Conley: "[G]et the hell out of here." Appellant immediately ran to his parked automobile, got inside, and then drove his vehicle away from Conley's premises. Conley, however, successfully managed to make a note of the number of the license plate that was on appellant's vehicle. Thereafter, she notified the authorities and informed them, inter alia, of the license plate number she had taken down. The vehicle was eventually traced to appellant, whose defense to the accusation was alibi.

The Court of Appeals held the above evidence was insufficient to establish beyond a reasonable doubt that appellant had committed the criminal offense of attempted burglary of Conley's habitation. It further held that appellant did not commit an "act," as that word is defined by V.T.C.A., Penal Code, Section 1.07(a)(1),* that amounted to more than mere preparation to effect the object offense. The Court of Appeals expressly stated the following:

> ... his conduct had not yet reached a point where it could be said to amount to more than mere preparation ...

We must respectfully disagree with the conclusions the Court of Appeals reached.

Recently, this Court in *McCravy v. State*, 642 S.W.2d 450 (Tex.Cr.App.1980), pointed out the following:

> There is necessarily a 'gray area' between an allegation of a situation which is clearly no more than mere preparation, and an allegation of a situation in which the accused is discovered clearly engaged in the last act prior to a successful entry.

V.T.C.A., Penal Code, Section 15.01(a) provides:

> A person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to

effect the commission of the offense intended.

This comports with former Penal Code Article 1402, which provided:

> An 'attempt' [to commit the crime of burglary] is an endeavor to accomplish the crime of burglary carried beyond mere preparation, but falling short of the ultimate design in any part of it.

■ We believe that the provisions of Section 15.01, supra, when read in conjunction with the present burglary statute, see V.T.C.A., Penal Code, Section 30.02, are clearly written to reflect that in order for the State to successfully establish that the crime of attempted burglary has been committed by the accused, it is necessary for the State to prove beyond a reasonable doubt, by either direct or circumstantial evidence, that the accused, with the requisite intent, did an *act* amounting to more than mere preparation to enter the habitation of the complainant, which tended, but failed, to effect the commission of the burglary.

In this instance, the State alleged that the "act," see supra, occurred when appellant "reached his hand through a screen door of [Conley's] habitation." We find and hold, contrary to the Court of Appeals, that the State proved its allegation beyond a reasonable doubt.

We believe that when the Court of Appeals held that the evidence was insufficient, it either did not read Conley's testimony in the light most favorable to the verdict of the jury, as it should have done, or it penalized the State because of the absence from the record of any testimony or evidence independent from Conley's, that either the screen door or the main front door to Conley's mobile home had sustained any damage.

■ This is not a case dependent on circumstantial evidence. Instead, it is a case based totally upon the eyewitness testimo-

---

* V.T.C.A., Penal Code, Section 1.07(a)(1) provides as follows:
  (a) In this code:

(1) "Act" means a bodily movement, whether voluntary or involuntary, and includes speech.

ny of Conley. Where the State's case is based on direct evidence, review of the question of the sufficiency of the evidence to sustain a conviction will be viewed in the light most favorable to the judgment, (where the trial judge is the trier of fact), or the verdict, (where the jury is the trier of fact). *Sewell v. State,* 578 S.W.2d 131 (Tex.Cr.App.1979). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Griffin v. State,* 614 S.W.2d 155, 159 (Tex.Cr.app. 1981), quoting from *Johnson v. Louisiana,* 406 U.S. 356, 362, 92 S.Ct. 1620, 1624, 32 L.Ed.2d 152 (1972). We believe that a rational trier of fact could have found that appellant committed the essential elements of the offense of attempted burglary.

If the Court of Appeals penalized the State because it did not present testimony or evidence independent from that adduced from Conley, which would have corroborated the testimony of Conley, that appellant was "going through the screen door, trying to get to the main door," and somehow managed to unlock the locked front door, it should not have done so, because such is not required in order to prove the offense of attempted burglary. This is not to state, however, that the prosecution should not have had the record more clearly reflect what damage either the screen door or the front door had sustained because of appellant's efforts to gain entry into Conley's mobile home. By its failure to make absolutely clear what damage was done to the screen door or the front door of the mobile home, the prosecution has caused what should have been an easy question to answer a most difficult issue to resolve. Nevertheless, it was unnecessary for the prosecution to prove more than it did, i.e., that appellant, acting with specific intent to commit the offense of burglary, did an act amounting to more than mere preparation that tended but failed to effect the commission of the offense of burglary. Section 15.01, supra.

The issue that was before the Court of Appeals, and now before us, is whether appellant's conduct caused him to cross the "imaginary line," which separates "mere preparatory conduct," which is usually noncriminal, from "an act which tends to effect the commission of the offense," which is always criminal conduct. In *McCravy v. State,* supra, this Court explained the application of the "imaginary line" in the following manner: "We do not believe that the intent of Sec. 15.01, supra, was to draw this line—" the imaginary line which separates the allegation of an act that amounts to no more than 'mere preparation' from the allegation of an act which 'tends ... to effect the commission of the offense'—*at the 'last proximate act.'*" [Emphasis Added].

■ Viewed in the light most favorable to the verdict of the jury, we find that the State proved through Conley's testimony an overt act, namely, that appellant reached his hand through a screen door that was attached to Conley's mobile home. This constituted an act amounting to more than mere preparation that tended but failed to effect the commission of the intended offense, namely, burglary of Conley's mobile home. Also see *McCravy v. State,* supra, at 460. Cf. *Jackson v. State,* 145 Tex.Cr.R. 46, 165 S.W.2d 740 (Tex.Cr. App.1942).

We have carefully examined all of the authorities appellant has cited in his well written appellate briefs, but find that the facts found in those causes are distinguishable from those found in this cause. Therefore, we will not discuss those decisions.

For the above and foregoing reasons, we hold that the evidence the State presented in this cause is sufficient to establish beyond a reasonable doubt that appellant attempted to enter Conley's residence without her consent and permission. E.g., *Hines v. State,* 458 S.W.2d 666 (Tex.Cr. App.1970). We also hold that a rational trier of fact could find that the State proved beyond a reasonable doubt what it had alleged. *Griffin v. State,* supra. The Court of Appeals erred in holding to the contrary.

**384**

The judgment of the Court of Appeals is reversed and the cause remanded to that Court.

ONION, P.J., concurs in the result.

CLINTON, Judge, dissenting.

The indictment for attempted burglary of a habitation alleged as the "act amounting to more than mere preparation," V.T.C.A. Penal Code, § 15.01(a), that appellant did "reach his hand through a screen door of the habitation ..." Appellant contended and the court of appeals agreed that "the evidence at trial fails to show beyond a reasonable doubt that Flournoy reached his hand through the screen door of the victim's mobile home." *Flournoy v. State,* 650 S.W.2d 526 (Tex.App.—Fort Worth 1983). Now the majority would find otherwise.

The State presented the complaining witness to relate what she saw appellant and his companion do and what she did on the occasion in question, and the majority opinion sets out as much of her testimony as it deems pertinent—in none of which, however, does the complainant say that she actually saw appellant "reach his hand through a screen door."[1] Thus, resolution of the sufficiency issue depends for the most part on how one interprets her "conclusory statements that this is what must have happened, instead of statements that she saw this happen," *Flournoy v. State,* supra, at 525.

In my view, three judges of the court of appeals are fully competent to, and did, review the record to find that "there was a failure of proof on this allegation by the State," *Flournoy v. State,* supra. See *Wilson v. State,* 654 S.W.2d 465, 469–470 (Tex. Cr.App.1983) (Clinton, J., dissenting). Verity of the policy position taken in *Wilson,* supra, is fortified in the instant cause by the fact that in reversing the court below the majority does not even pretend the opinion of the court of appeals implicates a reason for review. Ultimately all it does is conclude, contrary to the judgment of the court of appeals, that the evidence is sufficient. That is not a valid reason under our own rules. See Tex.Cr.App. Rule 302.

Adhering the view that "review" such as this misapprehends the new role assigned to this Court by constitutional amendment and legislative enactment, I respectfully dissent.

---

1. The majority relates:

"Conley further testified that ... she then saw appellant return to the front of the mobile home, where he 'proceeded trying to unlock the door ... his hands were moving like he was trying to—like a screwdriver or something, like he was trying to get into something.' Conley also testified: 'The screen door was closed, and he was trying to—going through the screen door, trying to get to the main door.... I was watching, as he kept moving his hands, like he was trying to open the [front] door.'"