**Dobbis Joe CARTER, Appellant,**

*v.*

**The STATE of Texas, State.**

**No. 2–84–021–CR.**

Court of Appeals of Texas,
Fort Worth.

June 6, 1985.

Law Offices of Lane & Lane, Jim Lane, Michael Sloan, Fort Worth, for appellant.

Tim Curry, Dist. Atty., David K. Chapman, Asst. Dist. Atty., Fort Worth, for State.

Before JORDAN, ASHWORTH and JOE SPURLOCK, II, JJ.

## OPINION

ASHWORTH, Justice.

Appellant was convicted by a jury of the offense of rape. TEX.PENAL CODE ANN. sec. 21.02 (Vernon 1974). The jury assessed punishment of twenty year's confinement in the Texas Department of Corrections and a $5,000 fine.

Appellant raises three grounds of error on appeal:

(1) The trial court erred in denying his motion to quash the indictment because the State improperly influenced the grand jury which returned the indictment;

(2) The evidence is insufficient to support the verdict.

(3) Appellant was denied a fair trial when the prosecutor elicited testimony from a probation officer during the punishment stage that appellant had been previously convicted of another offense.

We affirm.

Initially, we will address appellant's second ground of error in which he challenges the sufficiency of the evidence to support the conviction.

The evidence reflects that the conviction rests primarily upon the testimony of the complainant who testified that appellant raped her. She testified to the following facts: She arrived at her mother's house where she was spending the night about 1:30 a.m. after an evening out with friends at a Fort Worth night club. She had just dressed for bed and had lain down on the sofa when she heard a car drive up. She recognized appellant, a casual acquaintance whom she had met a year earlier while dating his cousin. Appellant asked her to come out and talk. The complainant dressed and went outside and talked with the appellant. He asked her to go with him to an after-hours club. The complainant agreed and changed clothes again. She accompanied appellant to an after-hours club called "Huey-You's" and went inside with him. She did not like the club or its occupants and after a short while, asked the appellant to take her home. The appellant agreed to take her home, but told her he needed to stop at a friend's house on the way. The complainant asked appellant to take her home first, but he insisted that he had to stop by the friend's house first which was on the way to her house. In fact, the friend's house was not on the way to complainant's house.

When they arrived at his friend's house, appellant went to the door and someone answered the door. Appellant came back to the car and told the complainant that his friend was not home at that time, but that they would wait for him inside. Complainant went inside with the appellant and sat down on the couch. Appellant sat down beside her and put his arms around her. The complainant immediately jumped up and said that she wanted to go home. Appellant told her that she was not going anywhere. The complainant went for the door, but appellant tackled her and a struggle ensued during which the complainant's head hit the front window, cracking the window pane. The complainant screamed. The appellant covered her mouth and nose with his hand. The complainant's face was bruised and her eye injured, apparently by appellant's finger punching her eye. During the struggle, a man came from the back of the house and asked what was going on. The appellant said that he had things under control. The complainant asked the appellant why he was hurting her, and he replied that he did not want to hurt her but that he wanted her. The complainant promised not to scream if appellant would stop hurting her, and the struggle stopped.

Then the complainant tried to talk the appellant out of trying to have sex with her. She also got appellant to help her nurse her facial wounds. Together they made two trips to the bathroom to wet a towel for her face. The complainant made a third trip to the bathroom alone and unsuccessfully tried to escape. She found an opportunity to make another trip alone to the bathroom, but this time, instead of going into the bathroom, she went into the back bedroom where a man, later identified as James Mills, slept. She woke the man telling him that the appellant was going to rape and kill her and asked him to help her. The man got up, put on a robe and went to the living room where he found appellant lying on the floor, fully clothed. The complainant asked the man to help her get away, but he only told the appellant to keep the noise of the arguing down and went back to the bedroom. Appellant then grabbed the complainant and told her that he was not trying to kill her, but that he might if she did not shut up. The complainant began screaming and appellant again covered her nose and mouth with his hand. The complainant began gagging and could not breath. Appellant told the complainant to remove her clothes, but she refused telling him that she would not help him. She testified that from this point on she did not either resist or help him because she feared for her life and she was afraid he would invite the others in the house to participate. Appellant removed the complainant's clothes and had intercourse with her. The complainant testified that she did not consent.

The appellant then drove the complainant home. She immediately told her mother, who accompanied the complainant to the hospital. Medical testimony confirmed that the complainant had recently engaged in intercourse and that her physical condition was not inconsistent with the conclusion that she had been raped.

James Mills testified that he and his grandmother were occupants of the house on the night that the alleged rape occurred there. He stated that the appellant came to his house looking for his cousin, Charles.

Mills told appellant that Charles had left a message that he would be back and that appellant should wait for him. Appellant asked if he could bring his "lady friend" [complainant] into the house to wait. Mills went back to his bedroom leaving appellant and the complainant in the living room. The next thing he remembered was being shaken by the complainant asking how to get out of the house. He pointed out the door going outside, but the complainant, apparently in a state of disorientation, went to the wrong door and started jerking on it. Mills said to her, "Don't do that because you'll wake up my grandmother." The complainant then grabbed his arm and started pulling him, saying, "He's trying to kill me. He's trying to kill me." Mills went into the living room to see what was wrong. He saw appellant laying on the living room floor smoking a cigarette. Mills asked appellant if what the lady said about him trying to kill her was true. Appellant acted surprised and said to complainant, "What's the matter with you?" Complainant answered, "You're trying to kill me. You're trying to kill me." Appellant said, "Let's go over here and talk." Mills left them sitting on the couch and went back to bed.

Appellant's only witness testified that the complainant's reputation for truth and veracity was bad. On rebuttal, the State presented testimony to the contrary from three witnesses.

In reviewing the sufficiency of the evidence to support a conviction based upon direct evidence, the evidence is viewed in the light most favorable to the verdict. See *Flournoy v. State*, 668 S.W.2d 380, 383 (Tex.Crim.App.1984). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Bonham v. State*, 680 S.W.2d 815, 819 (Tex.Crim.App.1984); *Wilson v. State*, 654 S.W.2d 465, 471 (Tex. Crim.App.1983) (opinion on rehearing).

The sufficiency of the evidence is a question of law. The issue on appeal is not

whether we as a court believe the prosecution's evidence or believe that the defense evidence "outweighs" the State's evidence. If there is evidence which establishes guilt beyond a reasonable doubt, and if the trier of fact believes that evidence, we are not in a position to reverse the judgment on sufficiency of the evidence grounds. *See Wicker v. State*, 667 S.W.2d 137, 143 (Tex.Crim. App.), *cert. denied*, —— U.S. ——, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984).

■ We have carefully reviewed the record and find sufficient evidence to support the conviction. The record contains some conflicting testimony, but the jury is the exclusive judge of the credibility and of the weight to be given the evidence. See *Denison v. State*, 651 S.W.2d 754, (Tex. Crim.App.1983). Appellant's second ground is overruled.

In his first ground, appellant contends that the trial court erred in failing to grant his motion to quash the indictment because the district attorney, through his deputies, improperly influenced the members of the grand jury which returned the indictment against the appellant. Specifically, appellant contends that a lecture on rape presented to the grand jury by the district attorney's office during the orientation session of the grand jury so inflamed the minds of the grand jurors that each rape indictment handed down by the grand jury, including appellant's, was tainted. Appellant takes the position that the district attorney has no authority to put on such educational seminars before a grand jury and that such a practice violates the "separation of powers" between the trial court and the State's attorney. In support of his argument, appellant cites TEX.CODE CRIM.PROC.ANN. art. 19.35 (Vernon Supp.1985), which provides that the trial court shall instruct the grand jury as to their duty, and arts. 20.03, 20.04, and 20.05 which authorize the attorney for the State to: (1) appear before the grand jury and inform them of offenses liable to indictment; (2) examine witnesses before the grand jury; and (3) advise the grand jury at their request upon any matter of law or upon any question arising respecting the proper discharge of their duties. Appellant admits that he can find no case authority to support his position.

The record reflects that the practice in Tarrant County is for the District Attorney's office to conduct a one-day orientation for each new grand jury to orient them to their responsibilities as grand jurors, i.e., their general statutory responsibilities, the different offenses and punishments, elements of proof, etc. As part of the orientation program, the District Attorney's office conducts a seminar to familarize the grand jurors with different aspects of the law with which they will be dealing. Eight general areas are usually covered: narcotics, child abuse, probation, checks, rape, pretrial release, bonds, and economic crimes. Generally a speaker is invited to present a program in his area of expertise, i.e., a police officer from the narcotics division will speak on controlled substances, a representative from the Department of Human Resources will speak on child abuse, a representative from the Rape Crisis Center will speak on rape, etc. The seminar is conducted after the grand jury is empaneled but before any cases are presented. The seminar ends with a tour of the county jail, and, in some instances, a tour of the penitentiary.

Jane Bingham of Rape Crisis testified during the hearing on appellant's motion to quash that she conducted the rape segment of the seminar which lasted about thirty minutes. She stated that her lecture included a discussion of the differences between sexual assault of an adult and that of a child, the different types of rapists, facts and myths about rape, and the fact that fear can immobilize a woman being raped. Bingham focused on rape from the victim's point of view. During her lecture, Bingham played a three-minute cassette tape of a woman calling the police as an intruder is breaking into her house. The hysterical woman tells the police dispatcher that she is in her house alone and someone is breaking in. The dispatcher tries to calm the woman, but she obviously is para-

lyzed with fear. She hears the intruder at her bedroom door and screams into the telephone "He's here!" The dispatcher assures her that the police are on their way. The woman screams as the intruder breaks into her bedroom and the telephone goes dead. Bingham explained that the purpose of the lecture and tape is to help the grand jurors understand the crime of rape from the victim's point of view. In particular, the tape demonstrates how a woman can be so totally paralyzed by fear she is incapable of physically fighting back. Thus, it is possible for a rape to occur without the defendant having to use or threaten physical violence to subdue his victim.

The record reflects that appellant was indicted approximately two weeks after the seminar was presented to the grand jury. No reference was made to appellant or his case during the course of the seminar. There is nothing in the record to indicate that anyone made any attempt to influence the grand jury to indict appellant. Further, there is no evidence in the record that anyone other than the grand jurors was present at the time the grand jury deliberated on appellant's case nor that the tape was played during its deliberation.

Appellant contends that the District Attorney's office has no authority to present educational information to members of the grand jury and such unauthorized programming is subject to abuse; however, appellant has not shown that the seminar programming was prejudicial nor that the grand jury in question was prejudiced by the seminar. Further, appellant has not shown how he was harmed. The record is devoid of any evidence that any member of the grand jury which indicted appellant was influenced by the seminar program to indict him. Appellant attempts to analogize the unauthorized programming before the grand jury to the situation involving unauthorized persons being present when the jury is deliberating or voting on a specific indictment. We find no merit to appellant's analogy.

It is well settled that unauthorized persons are not allowed in the grand jury room during deliberations. TEX.CODE CRIM.PROC.ANN. art. 20.02 (Vernon Supp.1985); *Ray v. State*, 561 S.W.2d 480, (Tex.Crim.App.1977). However, there is no rule prohibiting persons from appearing before the grand jury at other times. Further, TEX.CODE CRIM.PROC. art. 20.05 provides that "[t]he grand jury may send for the State's attorney and *ask his advice upon any matter of law* or upon any question arising respecting the proper discharge of their duties." [Emphasis added.] Further, we find nothing to prohibit the State's attorney from bringing in experts to inform the grand jurors about legal issues and offenses liable to indictment. Consequently, appellant's analogy must fail. Clearly, the District Attorney is authorized by statute to advise the grand jury "upon any matter of law."

Further, we find no merit to appellant's "violation of separation of powers" contention. Apparently, appellant takes the position that only the trial court is authorized to instruct the grand jury; however, art. 20.05, provides the State's attorney with authority to advise the grand jury "upon any question arising respecting the proper discharge of their duties."

We have carefully reviewed the record before us and find that appellant has totally failed to demonstrate how he was harmed by the State's general orientation to the grand jury on general areas of the law prior to presentment of cases to the grand jury. Therefore, we hold that the trial court did not err in denying appellant's motion to quash the indictment. Appellant's first ground is overruled.

In a third ground, appellant contends that his "right to a fair trial and due process were violated when the prosecutor elicited testimony from a probation officer that appellant had previously committed another offense and failed to prove that offense and failed to introduce a certified copy of that judgment."

Although appellant's ground is multifarious and preserves nothing for review on appeal, in the interest of justice, we will

consider his arguments. Appellant argues first that the prejudicial effect of the testimony that appellant had been previously convicted of burglary of a building *with intent to commit rape* could not be cured in light of the fact he was on trial for rape. Second, appellant argues that the State failed to prove the offense of which appellant had been previously convicted because the State failed to introduce in evidence certified copies of the judgment of the prior conviction. We find no merit to either argument.

At the punishment phase, the State's only witness was Ernest Briggs, a Tarrant County probation officer. His duties were to supervise probationers transferred to Tarrant County from other counties. When he was asked by the prosecutor what were the circumstances under which he met appellant, Carter answered, "Burglary of a habitation with intent to commit rape." Appellant immediately asked for a hearing, out of the presence of the jury, at which Briggs testified that his file on appellant contained an order granting probation with a copy of the indictment attached. The order granting probation reflects that appellant was found guilty of burglary of a habitation. The attached indictment reflects that appellant was charged with burglary of a habitation *with intent to commit rape.* Briggs testified that it was his understanding that appellant was convicted of burglary of a habitation with intent to commit rape. Appellant then objected to Brigg's previous non-responsive answer on the ground that the jury could not "consider fair punishment ... now that they have been told something that in fact is not true." The trial court sustained appellant's objection and instructed the State not to go into the indictment or the underlying felony upon which the burglary conviction is based. The trial court denied appellant's request for mistrial, and though asked by appellant not to instruct the jury to disregard, the trial court instructed the jury as follows:

THE COURT: Thank you, Ladies and Gentlemen of the Jury. In your absence, we took up a matter of law, and I will now instruct you as follows: Just before the recess, or just before I sent you into the juryroom, Mr. McEntire asked a question to the effect of this witness, Mr. Briggs, "How did you first learn of or how did you first meet or know of Dobbis Joe Carter," and the answer was given with regard to some type of a criminal offense.

I instruct you that you will disregard the answer given by the witness.

Brigg's testimony resumed with his identifying the appellant and testifying that the offense for which appellant was convicted and placed on probation for was burglary of a habitation. The State then rested.

Another hearing on this issue was held after the jury retired to deliberate to allow the appellant the opportunity to perfect additional evidence with regard to his previous motion and renewed motion for mistrial. At the hearing, appellant called J.M. McEntire, one of the prosecutors in the case, to testify. It is apparent from McEntire's testimony that defense counsel and the prosecutors in the case had been arguing among themselves all during the trial as to whether the State should be able to elicit that appellant was on probation for burglary of a habitation *with intent to commit rape* when the judgment, sentence, and order placing appellant on probation reflected the offense as burglary of a habitation. McEntire testified that Briggs was a last minute substitute from the probation office, that he told him to review the judgment and indictment so he could testify as to what appellant was convicted of and that he expected Briggs to testify that appellant had been convicted of burglary of a habitation with intent to commit rape, but was surprised when Briggs blurted it out when he did.

The appellant renewed his motion for mistrial which the trial court again denied stating:

The court reaffirms its previous position that under the law, the only admissible testimony that the witness Briggs could have given was to have followed

the language contained in the judgment, to-wit, the conviction being for burglary of a habitation, and that alone.

However, the Court is of the opinion that the testimony, though improper, was not such as would support a motion for a mistrial or was not such that the Jury on prompt instructions to disregard could not disregard, and the Court again reaffirms its previous position in denying the Defendant's Motion for Mistrial.

▇▇▇ First, we hold that the trial court's instruction to the jury to disregard the testimony regarding the prior offense was sufficient to cure error, if any. It is well settled that an instruction to disregard will cure error except where the question or evidence is clearly calculated to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impression produced in the juror's mind. *Carter v. State*, 614 S.W.2d 821, 825 (Tex.Crim.App.1981). We find the testimony in this case of such a nature that any adverse impression produced in the juror's mind was cured by the trial court's instruction to disregard.

▇▇▇ Second, we find that the State presented sufficient evidence of appellant's prior conviction through the testimony of Briggs, appellant's former probation officer. It is permissible for a defendant's prior criminal record to be established by someone, such as a probation officer, who personally knows the defendant and the fact of his prior conviction, and identifies him. *Daniel v. State*, 585 S.W.2d 688, 690 (Tex.Crim.App.1979). At trial, Briggs testified that he knew appellant and had previously supervised him on probation. He identified appellant and testified that appellant had been convicted of burglary of a habitation. At the hearing on the motion for new trial, appellant attempted to show that Briggs had no personal knowledge of what appellant was on probation for. Briggs admitted that he had no independent knowledge of the offense because he had forgotten. We find that it is clear that Briggs had to refresh his memory from the order placing appellant on probation, but such did not negate the fact that Briggs

had personal knowledge of appellant's prior record. Appellant's ground is overruled.

The judgment of the trial court is affirmed.