Carlos **RODRIGUEZ**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. C14–87–207–CR.

Court of Appeals of Texas, Houston (14th Dist.).

March 31, 1988.

Berta Mejia, Houston, for appellant.

John B. Holmes, Jr., Roe Morris, Houston, for appellee.

Before JUNELL, SEARS and CANNON, JJ.

## OPINION

JUNELL, Justice.

Carlos Rodriguez appeals a felony conviction for aggravated sexual assault. The jury found appellant guilty and assessed punishment at seventeen years confinement in the Texas Department of Corrections. We affirm.

In seven points of error, appellant asserts that (1) the evidence was insufficient to show that appellant used a deadly weapon; (2) the evidence was insufficient to show that appellant used a knife; (3) the trial court erred when it denied appellant's charge on the lesser included offense of sexual assault; (4) the trial court violated appellant's right to due process when it instructed the jury on good conduct time and parole eligibility; (5) the trial court violated appellant's right to due process since there was no evidence to support the instructions on good conduct time and parole eligibility; (6) the instructions in the charge regarding good conduct time and parole eligibility violated the Texas Constitutional separation of powers doctrine and (7) the judge presiding at appellant's trial lacked the requisite statutory authority to preside over the trial. We affirm.

On the night of March 27, 1986, complainant, a twenty-two year old deaf-mute female, was walking to her apartment after visiting a friend in the same apartment complex. As she was walking, appellant grabbed complainant and threw her into

the front seat of a waiting car. One of appellant's male friends occupied the car. After placing complainant in the car, appellant returned to the front seat of the car and quickly drove away. Appellant drove the car down a dirt road located behind the apartment complex and parallel to a bayou. After driving a short distance, appellant stopped the car. At that time complainant opened her car door and attempted to escape. Appellant chased complainant and soon caught her. Appellant then pulled her pants down and raped her. While he was raping her, appellant held a sharp knife to her neck. After the rape, appellant forced complainant to engage in oral sex while holding the knife on the side of her face. When he finished, appellant returned to the car. Before appellant drove away, his friend took complainant to a nearby grove of trees and raped her. Complainant eventually pushed the second man away and ran back to her apartment.

When complainant arrived home, she used sign language to tell her mother what had occurred. Complainant's mother asked to be taken immediately to the location of the assault. As they approached the area, the women saw appellant's car in the middle of the bayou and appellant climbing out of the bayou. The women also saw a police helicopter flying overhead and signaled for it to land. After landing the helicopter, Officer Robert J. Stolting learned from the women that complainant had been assaulted. Officer Stolting returned to the air, and quickly located appellant on the grounds of a nearby golf course. Additional officers at the scene apprehended appellant. The officers placed appellant inside the helicopter and returned him to the scene of the assault.

In his first and second points of error appellant asserts that the evidence is insufficient to support appellant's conviction for aggravated sexual assault since the state failed to prove beyond a reasonable doubt that appellant used or exhibited a deadly weapon, namely, a knife.

While a knife is not a deadly weapon per se, it can qualify as a deadly weapon by showing the manner of its use, its size and shape and its capacity to produce death or serious bodily injury. *Davidson v. State,* 602 S.W.2d 272, 273 (Tex.Crim.App.1980). *Alvarez v. State,* 566 S.W.2d 612, 614 (Tex. Crim.App.1978). Although wounds are a factor in determining the character of a weapon, they need not be inflicted before a knife can be determined to be a deadly weapon. *Denham v. State,* 574 S.W.2d 129, 130 (Tex.Crim.App.1978); See also *Cruz v. State,* 576 S.W.2d 841, 842–843 (Tex.Crim.App.1979). While expert testimony is not the only way to establish that a knife is a deadly weapon, it may be particularly useful in supplementing meager evidence on the issue in order to meet the sufficiency requirement. *Davidson v. State,* 602 S.W.2d at 273.

In reviewing the sufficiency of the evidence to support a conviction based upon direct evidence, the evidence is viewed in the light most favorable to the verdict of the jury. *Flournoy v. State,* 668 S.W.2d 380, 383 (Tex.Crim.App.1984). The critical inquiry is whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see also Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App. 1986). Whether the evidence was sufficient to support the jury's verdict is a question of law.

In this case, the knife was not in evidence. The complainant testified that a knife was held to her neck and face during the sexual assault. At one point during her testimony the complainant appeared to contradict herself; however, a complete review of the entire record shows that any inconsistency was probably related to her deafness, and the use of the court interpreter.

Complainant described the knife as shiny, sharp on one edge of the blade and similar to a fishing knife. While the Court of Criminal Appeals has required very explicit testimony on the character of the weapon involved, the complainant's testimony here satisfies that requirement.

Q. Did he put his penis inside of you?

A. Yes.

Q. Did he put it inside your vagina?

A. Yes, very hard, and I hurt.

Q. What was going through your mind when he did this to you?

A. Well, he just kept going for so long and he was mean, and then he had a knife at my neck.

Q. When did he get a knife out?

A. When he was raping me, he pulled a knife out.

Q. Show me how long the knife was.

A. It was about like this.

Q. Is that the whole knife, the handle and the blade?

A. Yes, that was about how long it was even with the handle.

Q. Was the knife sharp on both sides or just one side?

A. Just one side was sharp.

Q. Did it look like a kitchen knife?

A. No. More like a fishing knife. Something that you'd use for fishing.

Q. Did it look sharp?

A. It was sharp.

Q. How did you feel when you saw the knife?

A. Oh, I was nervous and I was so scared. It makes me want to cry right now.

Q. Where did he put the knife? Show me.

A. In my face first.

Q. Could you tell if he was talking to you when he put the knife in your face?

* * * * * *

Q. Okay, stop. Before the thin man, did the fat man [appellant] do anything else to you? Did he try to get you to do something else?

A. He pulled my head down. Put his penis in my mouth.

Q. How did he pull your head down?

A. He pulled it by my hair and then put it in my mouth.

Q. Did he make you put his penis in your mouth?

A. He was real mean. He just pulled it down and he said: "I am going to kill you."

Q. Did his penis go inside your mouth?

A. Yes.

Q. Where was the knife when he did this?

A. It was on the side of my face.

* * * * * *

Q. What color was the handle of the knife?

A. I don't know. I could just see something shiny. I could just see something shiny was all.

Q. So you don't know definitely that this something you saw shiny was a knife or not?

A. No.

Q. Could have been something other than the knife, could it not?

A. The fat man [appellant], he was the thin man. But the fat man [appellant] did have the knife.

The state also called Officer David Hallene to testify regarding the knife and the manner of its use. Officer Hallene testified that he had eight years experience with the Houston Police Department and had been present at the scene of numerous homicides and assaults involving knives and stabbings. The officer further testified that a knife similar to the one described by complainant and used in the manner described by complainant could be considered a deadly weapon.

We hold that complainant's testimony describing the knife and the manner of its use together with Officer Hallene's testimony that the knife could be considered a deadly weapon were sufficient evidence to support the jury's finding that a deadly weapon was used during the sexual assault. Points of error one and two are overruled.

■ In point of error three appellant contends the trial court erred in denying appellant's requested charge on the lesser included offense of sexual assault.

A lesser included offense is defined in Tex.Code Crim.Proc.Ann. art. 37.09 (Ver-

non 1981). This statute states in relevant part:

An offense is a lesser included offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

A two-step analysis is used to determine whether a lesser included offense instruction is required in the charge. First, the lesser included offense must be included within the proof necessary to establish the offense charged. Secondly, there must be some evidence in the record that if the defendant is guilty, he is guilty of only the lesser offense. *Eldred v. State*, 578 S.W. 2d 721, 722 (Tex.Crim.App.1979).

During his trial appellant testified that he did not rape complainant and that he did not have a knife. In *McBrayer v. State*, 504 S.W.2d 445, 447 (Tex.Crim.App.1974) it was held that merely because a lesser offense is included within the proof of a greater offense, a jury charge on the lesser offense is not required unless there is testimony raising the issue that the defendant, if guilty, is guilty only of the lesser offense. There is no such evidence in the record. Appellant's testimony did not raise the issue of a lesser included offense. If this court were to find otherwise, then in every aggravated offense case the issue of a lesser included offense would be raised when a defendant denied possession of the weapon. We believe that this was not the legislative intent of Tex.Code Crim.Proc. Ann. art. 37.09 (Vernon 1981). Point of error three is overruled.

 In points of error four, five and six appellant complains that the trial court erred in including instructions on parole eligibility and good conduct time in the charge on punishment since (1) these instructions violated appellant's rights to due process, (2) no evidence was presented to support these instructions and (3) these instructions violated the Texas Constitu-

tional separation of powers doctrine. A proper objection to the charge must be made at trial or the error must be shown to be fundamental error resulting in egregious harm before appellant can obtain a reversal. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984). We have examined the record and find that appellant made no objection at trial to the inclusion of these instructions in the charge. Moreover, after examining the record we hold that even if this error had been preserved, appellant failed to show that he did not receive a fair and impartial trial. *Almanza v. State*, 686 S.W.2d at 171. Therefore, we need not address the merits of appellant's contentions. Points of error four, five and six are overruled.

 In point of error seven appellant asserts that his conviction is void because the judge who presided over appellant's trial lacked the required statutory authority to preside. Appellant further asserts that the judge's assignment was in violation of Tex.Gov't Code Ann. § 74.031 and § 74.061. The Honorable H.G. Andrews, Jr., Senior Judge of the 259th District Court, was assigned to the 174th District Court of Harris County beginning January 25, 1987. Honorable Tom Stovall, Presiding Judge of the Second Administrative Judicial District, made the assignment. Appellant's trial began on January 26, 1987.

Appellant erroneously cites Tex.Gov't Code Ann. § 74.031 and § 74.061 (Vernon 1987) as the statutes governing judicial assignments at the time of his trial. However, these statutes were not in effect at that time. On May 27, 1985 the Texas legislature enacted a comprehensive act for the administration of the courts in the Texas judicial system. The Court Administration Act became effective on January 1, 1986. The statutes governing the assignment of judges in Harris County at the time of appellant's trial were § 4.016 and § 4.017 of the Court Administration Act. Section 4.016 of the Court Administration Act provides:

Assignment by Presiding Judge. (a) Under rules prescribed by the council of

judges, a presiding judge from time to time shall assign the judges of the administrative region to hold special or regular terms of court in any county of the administrative region to try cases and dispose of accumulated business. The assignment may be made during or after the consultation concerning the state of the business of the courts at a meeting of the judges of the administrative region and with or without an additional meeting of the judges.

(b) The presiding judge of one administrative region may request the presiding judge of another administrative region to furnish judges to aid in the disposition of litigation pending in a county in the administrative region of the presiding judge who makes the request.

Section 4.017 of the Court Administration Act provides:

Assignment by Chief Justice. (a) In addition to the assignment of judges by the presiding judges as authorized by this chapter, the chief justice may assign judges of one or more administrative regions for service in other administrative regions when he considers the assignment necessary for the prompt and efficient administration of justice.

(b) A judge assigned by the chief justice shall perform the same duties and functions authorized by this chapter that the judge would perform if he were assigned by the presiding judge.

Therefore, we hold that Honorable H.G. Andrews, Jr. was properly assigned to the 174th District Court of Harris County and that he possessed the statutory authority to preside at appellant's trial. Point of error seven is overruled.

The judgment of the trial court is affirmed.