# . 12-09-00226-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *CHRISTOPHER ROBERT GEAR, APPELLANT* | § | *APPEAL FROM THE 217TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| *THE STATE OF TEXAS, APPELLEE* | § | *ANGELINA COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Christopher Robert Gear appeals his conviction for attempted burglary of a habitation. In two issues, Appellant argues that the evidence is legally and factually insufficient to support the verdict. We reverse and render.

## BACKGROUND

Mona Brown was resting at her home after lunch when she heard what sounded like a door rattling on her house. Her husband[1] works at a nearby sawmill, and she thought he had returned to get a tool, something he did fairly often. She dozed again and was again awakened by more noises. This time it sounded to her like her husband was inside the house banging around trying to get the grass trimmer out of the house. She knew, however, that the noises were not routine when she heard three loud bangs, one after the other. This caused her to get up and go to investigate.

As she walked to where she expected to see her husband, Brown was surprised to find that he was not there. She was also surprised when she did not to see his truck parked in its customary

---

[1] For ease of narration, we refer to Brown by her married name. She and her husband were not married at the time of the incident but did marry prior to trial.

1

place in front of the house. She did notice, however, that the back room—a room that is ordinarily quite dark because the windows were covered with dark curtains—was very brightly lighted. She went into the room and saw that a window was broken out. She went over to the window and came face to face, within six inches, with Appellant, who was outside of the house. She thought he was trying to leap through the window into the house. She asked Appellant what he was doing, and he said something like, "I didn't do it." Appellant began walking away, and Brown called the police.

The police found Appellant walking along the highway some distance from Brown's house. They brought Brown to where they had detained Appellant, and she identified him as the person she saw outside her window. Appellant told her that he had not been trying to break into her house. The officer gave Appellant a trespass warning and released him.

An Angelina County grand jury indicted Appellant for the felony offense of attempted burglary of a habitation. Appellant waived a jury trial and pleaded "not guilty" at a bench trial. The trial court heard evidence and found Appellant guilty as charged. Following a sentencing hearing, the trial court assessed punishment at imprisonment for five years. This appeal followed.

SUFFICIENCY OF THE EVIDENCE

In his first and second issues, Appellant argues that the evidence was insufficient to support the verdict. Specifically, he argues that the evidence was insufficient to prove that he broke the window in Brown's house with the intent to commit a burglary.

**Applicable Law**

The due process guarantee of the Fourteenth Amendment requires that a conviction be supported by legally sufficient evidence. *See Jackson v. Virginia*, 443 U.S. 307, 315–16, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979); *Ross v. State*, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004); *Willis v. State*, 192 S.W.3d 585, 592 (Tex. App.–Tyler 2006, pet. ref'd). Evidence is not legally sufficient if, when viewing the evidence in a light most favorable to the verdict, no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *see also Rollerson v. State*, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007).

While legal sufficiency review is all that is required by the U.S. Constitution, the Texas Court of Criminal Appeals has determined that the Texas Constitution requires further review of

the factual sufficiency of the evidence. *Clewis v. State*, 922 S.W.2d 126, 129–30 (Tex. Crim. App. 1996). Factual sufficiency review differs from legal sufficiency review only slightly. *See Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006). In a factual sufficiency review, we review the evidence without the light most favorable to the verdict and we are authorized, "albeit to a very limited degree," to disagree with the jury's resolution of contested factual issues. *See id.*; *Watson v. State*, 204 S.W.3d 404, 414, 417 (Tex. Crim. App. 2006). In a review of the factual sufficiency of the evidence, we will conclude that the evidence is insufficient only if the great weight and preponderance of the evidence contradicts the jury's verdict or the verdict is clearly wrong and manifestly unjust. *See Rollerson*, 227 S.W.3d at 724; *Watson*, 204 S.W.3d at 417.

Under either standard, our role is that of appellate review, and the fact finder is the principal judge of the weight and credibility of a witness's testimony. *Wesbrook v. State*, 29 S.W.3d 103, 111–12 (Tex. Crim. App. 2000). The fact finder may choose to believe all, some, or none of a witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).

The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *Id*.

The State was required to prove that Appellant, with the intent to commit the offense of burglary of a habitation, did an act that amounted to more than mere preparation which tended but failed to effect the commission of the intended offense. *See* TEX. PENAL CODE ANN. § 15.01(a) (Vernon 2003). As relevant here, a person commits burglary if, without the effective consent of the owner, he enters a habitation with intent to commit a felony, theft, or an assault. TEX. PENAL CODE ANN. § 30.02(a)(1) (Vernon 2003). The indictment alleged that Appellant broke out a window in Brown's house with the specific intent to commit the offense of burglary of a habitation.

**Analysis**

Appellant testified that he broke out the window and made the noises that Brown heard.

3

According to Appellant's version of events, he had quit a job earlier that day with a roofing company. He said that he took a nap on a couch in the front yard of Brown's house. After sleeping for some time, he awoke and went around to the back of the house where he relieved himself. He stated that he then became angry with himself for the predicament he was in–he had only a dollar or two, had just quit his job, and had no transportation–and began to punch the side of the house and an adjacent fence.

He gave a slightly different version of events to an investigator from the district attorney's office, telling him that he accidentally broke the window because he leaned against the window frame as he was relieving himself, causing the window to break. Neither of these explanations fit the course of events that Brown described. The first rattling noise she heard was from a side door that had been nailed shut. The escalated, louder noises were directed strikes aimed at the window. It is reasonable to conclude that Appellant was attempting to gain entry to the house through his persistent efforts at what looked like points of entry. Brown's observation that it appeared Appellant was attempting to enter the house through the window is also consistent with his breaking the window for the purpose of gaining entry.

To be guilty of an attempt, there must be evidence that the person acted with "the specific intent to commit" the underlying offense. *See* TEX. PENAL CODE ANN. § 15.01(a); *Laster v. State*, 275 S.W.3d 512, 521 (Tex. Crim. App. 2009). Burglary, the underlying offense here, requires proof that the person entered a habitation with the intent to commit a felony, theft, or an assault. TEX. PENAL CODE ANN. § 30.02(a)(1).[2]

At trial, the State did not offer a theory as to what offense Appellant intended to commit within the house. The State did point out that there was "no explanation as to why he would want to enter the residence for a lawful purpose" and that the trial court could conclude from his implausible explanation that "he is covering up what his true intent was." On appeal, the State points out that a defendant's conduct and the surrounding circumstances may be found to imply intent to commit burglary, but the State does not explain how the evidence in this case allows the inference that Appellant intended to commit a felony, theft, or an assault within the house.

---

[2] There was confusion at trial as to the State's burden of proof. The court asked whether the State had to prove the "mens rea or the intent of [] what the underlying offense was . . . ." The State responded in the negative. Appellant argued that the State did have to prove that he acted with the specific intent to commit burglary, which included "all the elements of burglary of a habitation." On appeal, the State does not challenge Appellant's assertion that it was required to prove Appellant had the intent to commit a felony, theft, or an assault within the house.

4

We begin by pointing out that the burglary statute does not condemn all entries that are not for lawful reasons. All unlawful entries are condemned by the statute prohibiting criminal trespass. *See* TEX. PENAL CODE ANN. § 30.05(a) (Vernon Supp. 2009). Burglary includes only a subset of those entries, those made with the intent to commit a felony, theft, or an assault. TEX. PENAL CODE ANN. § 30.02(a)(1). We agree with the State that it appears, and the trial court believed, that Appellant was not being truthful as to what he was doing that day at the Browns' house. But while the implausibility of his story suggests that it is not true, it does not lead to the conclusion, even in a light most favorable to the verdict, that he intended to commit some felony, to steal something, or to assault a person within the house.[3]

As the State points out, courts have been quite deferential when allowing inferences as to a person's intent when trying to break into a building. In *Richardson v. State*, 973 S.W.2d 384, 387 (Tex. App.–Dallas 1998, no pet.), the court held that the finder of fact could infer intent to commit an attempted burglary where a person saw two men pull up to a neighbor's house and the defendant was apprehended with a screwdriver that matched fresh pry marks on the door. In *Roane v. State*, 959 S.W.2d 387, 388–89 (Tex. App.–Houston [14th Dist.] 1998, pet. ref'd), the court held the evidence was legally sufficient to support an inference of intent to commit burglary based on the fact that the appellant had been wearing latex gloves and had been chipping at the window of a home that was later found to be lacking a screen and missing caulking about the window. *Id*. at 388. In *Roach v. State*, 635 S.W.2d 169, 171 (Tex. App.–San Antonio 1982, no pet.),[4] a plurality of the court found it sufficient to infer intent to commit a theft within the structure when the defendant hid upon being alerted to the police presence, his knife was found at the scene, which may have been used to force a door open, and the attempted entry occurred at night.[5] In *Smith v. State*, No. 01-01-00272-CR, 2002 Tex. App. LEXIS 4786, at *14–15 (Tex.

---

[3] The burglary statute also covers those who commit a felony, theft, or an assault after breaking into a structure as well as those who remain concealed within a building with the intent to commit a felony, theft, or assault. *See* TEX. PENAL CODE ANN. § 30.02(a)(2), (a)(3). Appellant was not charged with violating those parts of the statute.

[4] The court of criminal appeals decision in *Flournoy v. State*, 668 S.W.2d 380, 383 (Tex. Crim. App. 1984), is often cited for the proposition that intent to commit burglary can be inferred in a case where the defendant tried several times to get into a mobile home before being encouraged to leave by an armed homeowner. While the court in that case did hold that the evidence in that case was legally sufficient to prove each essential element of the offense, the decision is tightly focused on the question of whether the defendant's actions in that case went beyond mere preparation, and not on the question of intent. *Id*. at 381–83.

[5] As a tool of appellate review, courts have historically employed a presumption of intent to commit theft when there is a nonconsensual nighttime entry. *See Aguilar v. State*, 682 S.W.2d 556, 558 (Tex. Crim. App. 1985)

App.–Houston [1st Dist.] July 3, 2002, pet. ref'd) (mem. op., not designated for publication), the court held that intent could be inferred because the burglary occurred at night and because the defendant had burglary tools, was out of breath, sweating, and appeared to be nervous. In **Bothwell v. State**, No. 12-08-00047-CR, 2009 Tex. App. LEXIS 2163, at *11–12 (Tex. App.–Tyler Mar. 31, 2009, pet. ref'd) (mem. op., not designated for publication), this court held that a burglary inference was supported by evidence that the appellant appeared to be engaged in a concerted effort to break into the house, he had an implement that appeared to have been used to break a window, and he made two trips to the house.

Finally, though not a burglary case, in **Laster v. State**, the court of criminal appeals held that the evidence was sufficient to conclude that the defendant intended to kidnap, and therefore to secrete away, a child because he "grabbed and then pulled [her] toward him," "continued to pull [her] after her brother came to her aid," and did not release her until a "driver honked the car's horn." *See* **Laster v. State**, 275 S.W.3d 512, 522 (Tex. Crim. App. 2009). Instrumental to the court's conclusion that the defendant intended to hold or secrete the child in a place where she was unlikely to be found was evidence that the defendant did not simply "grab at" the child, but "pulled her away." **Id**. at 523. The court concluded that this evidence supported the jury's verdict that the defendant intended to secrete or hold the child. **Id**. The court reasoned that even when there are other plausible inferences supported by the evidence, it is within the province of the factfinder to choose which inference is most reasonable so long as the verdict itself is supported by a reasonable inference. **Id**.

In this case, there is no reasonable inference to support the conclusion that Appellant intended to commit a felony, theft, or an assault within the house. Indeed, the State has not identified, either at trial or on appeal, what evidence supports the conclusion that Appellant intended to commit a felony, theft, or an assault within the house. It is reasonable to conclude that Appellant pushed at the nailed–shut door and broke the window because he was trying to get into the house. But among the various things he could have done inside, there is no evidence to support a conclusion that he intended to commit a felony, theft, or an assault. He testified that he thought the house was abandoned, and that he could not believe that anyone lived there. This assertion allows the inference that he did not intend to commit a theft within the house or that he did not think it was a dwelling, but the trial court was not required to believe his assertion.

(en banc)

It is true, as the State points out, that Appellant fled the scene. But at that point, Appellant had already committed a crime by breaking the window. His flight was not more consistent with having committed a burglary than it was with committing criminal mischief, or with sheepishly retreating after waking a woman in the middle of the day. Appellant had no burglary tools, the events did not occur at night, he did not have a vehicle with which to spirit away stolen items, there was no evidence of an organized or planned effort to steal from the home, he had no accomplices ready to assist him, and there was no evidence that he was casing or otherwise scouting out the home. In short, the kind of additional facts present in attempted burglary cases that allowed the inference that it is a felony, theft, or an assault that the person intended to commit within the building are not present in this case.[6]

There is the matter of Appellant's denials. He denied he was trying to break into the house. Furthermore, he had previously been convicted of robbery, theft, and possession of hash oil. But, as we have said, there is sufficient evidence to conclude that he was attempting to break into the house. His denial of being the person who broke the window is consistent with his intending to commit a felony, theft, or an assault within the house. But as with his flight, his unconvincing story allows the conclusion that it is not true but not that he intended to commit a felony, theft, or an assault within the house.

This is an unusual case in which there is no evidence that allows any inference about what Appellant intended to do within the house. By a process of elimination, a rational finder of fact could conclude that Appellant's intentions were not honorable. But we read *Laster* to mean that while the factfinder's prerogative to choose among plausible and rational readings of the evidence is beyond our review, there must still be some evidence to prove the essential elements of the offense and a verdict must be supported by a reasonable inference. In that case, the fact that the defendant did not release the child until a horn was honked allowed the conclusion that he intended to commit a kidnapping. *Id*. at 523. There is not such evidence in this case.

In light of the standard of review, and the *Laster* decision, the evidence that allows the finder of fact to rationally pick one inference when several are available may be very slight. But

---

[6] Although the State did not present this fact as part of an argument, it is also true that Appellant testified that he did not have very much money. We are reluctant to make arguments for parties; but we do not conclude, under the facts of this case, that Appellant's lack of money allows an inference that he intended to commit a theft. His testimony about a lack of funds came in the context of a discussion about his general frustration with having walked off his job and with being hot, sweaty, and tired. Without more, the fact that he did not have much money in his pocket does not allow the inference that he intended to commit a theft inside the house.

the burglary statute requires a very specific kind of intent.   Because of the lack of any evidence in this case that leads to the conclusion that Appellant intended to commit a felony, theft, or an assault inside the house, we hold that the evidence is legally insufficient to support the verdict. We sustain Appellant's first issue.   Because we sustain his first issue, we do not reach the issue of the factual sufficiency of the evidence.

## DISPOSITION

Having sustained Appellant's first issue, we *reverse* Appellant's conviction and *render* a judgment of *acquittal*.


**BRIAN HOYLE**
Justice


Opinion delivered May 12, 2010.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)