**Jerry Marcus JERNIGAN, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–84–110–CR.**

Court of Appeals of Texas, Fort Worth.

April 9, 1986.

---

2. The judgment taxed costs against both Great State and Arrow Rig.

Jackson, Sorrels, Shapiro & Anton, and Bruce Anton, Dallas, for appellant.

Henry Wade, Dist. Atty., and Jeffrey B. Keck, Asst. Dist. Atty., Dallas, for State.

Before ASHWORTH (Retired, Sitting by Assignment), JOE SPURLOCK, II and HILL, JJ.

## OPINION

ASHWORTH, Justice (Retired, Sitting by Assignment).

Appellant was charged by indictment with the offense of aggravated kidnapping, conduct proscribed by TEX.PENAL CODE ANN. sec. 20.04(a)(3) and (5) (Vernon 1974) (abduction with intent to facilitate flight after attempt to commit and commission of a felony—i.e., burglary of a habitation— and with intent to terrorize the victim of the kidnapping). This conduct is made punishable as a first or second degree felony depending on whether the victim was or was not voluntarily released by the defendant in a safe place. TEX.PENAL CODE ANN. sec. 20.04(b) (Vernon 1974). The indictment also alleged two prior felony convictions for the purposes of enhancement pursuant to TEX.PENAL CODE ANN. sec. 12.42(d) (Vernon Supp.1986).

Trial was to the jury which found appellant guilty of aggravated kidnapping as alleged in the indictment. However, it also found that the victim of the kidnapping, Vivian Kiser, was voluntarily released by the appellant in a safe place. Having found that both of the enhancement paragraphs contained in the indictment were true, the jury assessed appellant's punishment as confinement in the Texas Department of Corrections for life.

We affirm.

In ground of error one, appellant contends that the trial court erred in failing to hold a hearing on appellant's speedy trial motion.

The record originally before this court showed that appellant was arrested on January 8, 1983, for the instant crime which occurred on that date. In September of 1983, the indictment was returned and the State announced ready. Appellant was in continuous custody on this case since January 8, 1983. No waivers are reflected in the record. Appellant filed a timely motion to dismiss on speedy trial grounds, which was denied.

In its brief, the State argues that the instant indictment was actually the second reindictment of the aggravated kidnapping charge against the appellant and that he was also indicted for and convicted of another offense arising out of the present transaction. However, the record originally before this court did not reflect the other indictment and conviction. This court abated the appeal and remanded the cause to the trial court for a hearing on appellant's speedy trial motion. Such hearing has been held and the motion denied. A supplemental transcript, statement of facts, and findings of fact and conclusions of law by the trial court are now part of the record before this court.

We restate in this opinion the first nine findings of fact by the trial court as to the speedy trial hearing:

1. The defendant was arrested January 8, 1983, and kept in continuous custody until the date of trial.

2. The defendant was first indicted for the offense of Aggravated Kidnapping in cause No. F83–84005–UR. Said indictment was filed February 7, 1983.

3. The State filed announcements of ready in cause No. F83–84005 on February 11, 1983 and on March 23, 1983.

4. The defendant was reindicted for the same offense in cause No. F83–97744–UR.

5. The State announced ready for trial in cause No. F83–97744–UR on March 23, 1983.

6. The defendant was again reindicted for the same offense in cause No. F83–96689–KRH. It was upon this indict-ment that the defendant was ultimately tried.

7. The State announced ready for trial in cause No. F83–96689–KRH on September 26, 1983.

8. Each of the indictments were for the same crime. The reindictments were all for the same case.

9. The State's announcement of ready in cause number F83–84005–UR, dated February 7, 1983, was within the statutory 120 day time period and applied to reindictments numbers F83–97744–UR and F83–96689–KRH, which were the same case. *See, Perez v. State,* 678 S.W.2d 85 (Tex.Crim.App.1984).

We adopt the conclusion of the trial court that the State made a prima facie showing of ready within the statutory time period, *Phillips v. State,* 659 S.W.2d 415, 419 (Tex. Crim.App.1983), and the appellant failed to adduce any evidence to rebut the showing of readiness. *Smith v. State,* 659 S.W.2d 828, 830 (Tex.Crim.App.1983). Appellant has been afforded his right to a hearing on his speedy trial motion. There was no error by the trial court in denying such motion after such hearing. Appellant's first ground of error is overruled.

In ground of error two, appellant contends that the evidence is insufficient to prove the first enhancement paragraph of the indictment because the pen packet, introduced as evidence of the convictions found in the first enhancement paragraph, failed to indicate that it came from the District Court of Tarrant County as alleged in the first enhancement paragraph.

The facts pertinent to this ground of error are as follows. The first enhancement paragraph of the indictment alleged that the appellant was convicted of burglary on June 14, 1972 in the Criminal District Court No. 1 of Tarrant County, Texas, in Cause No. 863513. In support of this allegation the State offered State's exhibit no. 24, a pen packet which apparently contained a copy of only *one* side of the judgment and sentence form utilized in that case. The other side of the judgment and sentence, listing the cause number (86353),

the court (Criminal District Court No. 1 of Tarrant County) and the style of the case (*State of Texas v. Jerry Marcus Jernigan* ), was not included in the exhibit because it was apparently not photocopied when this pen packet (State's exhibit no. 24) was prepared by the custodian of records at the Texas Department of Corrections.

At the time State's exhibit no. 24 was offered, this defect was noted by appellant's counsel who initially objected to the admission of State's exhibits nos. 23–25 on the ground that, as to the Tarrant County convictions evidenced in those penitentiary packets, the judgments and sentences did not indicate "what court if any heard the case." The trial judge overruled appellant's objections to the pen packet stating the following:

> On the record, Mr. Perry [court reporter], with the jury still absent from the courtroom and the defendant—with the jury still absent from the courtroom, the Court is going to overrule the defense objections to Exhibits 23, 24 and 25, *subject to an offer of proof to be made by the State at a point later in time* regarding the *back side* of the *judgment and sentences,* the actual document of the pages of the judgment and sentences from Tarrant County which, *as we have seen photocopies of during recess,* do properly reflect that those judgments and sentences emanated from the Criminal District Court No. 1 of Tarrant County, Texas.
>
> We have kept the jury waiting a little over an hour on this, and rather than delay the trial another day on a matter which apparently the State would prove up outside the presence of the jury satisfactorily, we're proceeding in this manner *with the agreement of defense counsel,* with the understanding that if the State should fail to make this proof at that point later in time, that the State will join the defense in a request for a new trial in this case.

[Emphasis added.]

The following then occurred:

> MR. ANTON [Defense Counsel]: I'd like to state for the record that that is—our agreement is—
>
> Did you—having heard the Court, Mr. Jernigan, was that your understanding of the agreement in regard to these packets?
>
> THE DEFENDANT: Yes.
>
> MR. ANTON: Okay. With one further proviso, that the State had agreed that they would provide this within thirty days.
>
> THE COURT: All right, that's fine.

The case on punishment was then submitted to the jury with State's exhibits nos. 23–25 being the only evidence of any of the Tarrant County convictions. Appellant did not urge the defect regarding the relevant Tarrant County conviction to the jury during final argument. Thereafter, on March 14, 1984, a day within the agreed 30-day time limit for the State's production of the required documents, the State introduced State's exhibits nos. 27–29. State's exhibit no. 27 included the other side of the judgment and sentence in Cause No. 86353.

Although it is true that appellant did object to State's exhibit no. 24, nevertheless, we find that appellant's affirmative acquiescence, as is set forth above, to the procedure utilized by the trial court constituted waiver of his objection to the pen packet. *See Sheeley v. State,* 530 S.W.2d 108, 109 (Tex.Crim.App.1975) (opinion on reh'g), *cert. denied,* 425 U.S. 980, 96 S.Ct. 2187, 48 L.Ed.2d 807 (1976) and *Smith v. State,* 595 S.W.2d 120, 123 (Tex.Crim.App. 1980). Accordingly, appellant's ground of error two is overruled.

In appellant's remaining grounds of error, he challenges the sufficiency of the evidence supporting the jury's verdict. In reviewing the sufficiency of the evidence to support a conviction based upon direct evidence, the evidence is viewed in the light most favorable to the judgment (where the trial court acts as the trier of fact), or the verdict (where the jury is the trier of fact). *See Flournoy v. State,* 668 S.W.2d 380, 383 (Tex.Crim.App.1984). The critical inquiry is whether, after so viewing the evidence,

any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Wilson v. State,* 654 S.W.2d 465, 471 (Tex.Crim.App.1983).

The sufficiency of the evidence is a question of law. The issue on appeal is not whether we as a court believe the prosecution's evidence or believe that the defense evidence "outweighs" the State's evidence. If there is evidence which establishes guilt beyond a reasonable doubt, and if the trier of fact believes that evidence, we are not in a position to reverse the judgment on sufficiency of the evidence grounds. *Wicker v. State,* 667 S.W.2d 137, 143 (Tex.Crim.App. 1984).

At trial, Loretta McDonald, the State's first witness, testified regarding the attempted burglary of her habitation on January 7, 1983. At approximately midnight on that date, she heard a noise outside her house. She looked out her den window and observed a man standing on her patio by the door to the attached garage of her residence. The man was holding an axe belonging to her in such a manner as to suggest that he was about to use it to gain admittance to the garage. The patio was enclosed by wrought iron bars, several apparently bent by the intruder in order to gain access to the patio. Upon seeing this intruder, McDonald began screaming for her husband. The intruder promptly fled. McDonald immediately called the police and several plainclothes officers arrived in a short time. She further testified that her residence at 2033 Wellington in Grand Prairie was less than a mile from Royal Oak Manor Apartments and within three blocks of the Willow Tree Apartments. Finally, she stated that she had a gazebo in her backyard.

The State then called the complaining witness, Vivian Roberts, whose name was Vivian Kiser at the time of the incident in question. Complainant testified that on January 7, 1983, she was living at the Royal Oak Manor Apartments on Freetown Road in Grand Prairie with her three children and her boyfriend, Paul Roberts, whom she subsequently married. At approximately 2:30 a.m. on January 8, 1983, she had gotten off work and went to her apartment, which in her estimation, was located approximately one-half mile from McDonald's house on Wellington.

Complainant stated that after she parked her car and was walking up to the apartments, she noticed that the motor of her boyfriend's car was running and there was a man sitting in this car wearing a multicolored green mask and holding a gun. The masked man motioned for her to come over to the car and after a brief conversation, placed a small pistol in her back, held on to her hair with his other hand and took her upstairs to her apartment. She also stated that she thought the kidnapper was going to shoot her.

Complainant further stated that the kidnapper then took her into the bedroom where her boyfriend, Paul Roberts, was asleep. Roberts was not easily awakened and thought that the kidnapper was complainant's brother playing a practical joke on him. As the complainant and the kidnapper walked back down the hall from the bedroom, he told her that Roberts "could have been shot."

The kidnapper then forced complainant to go outside and down the stairs to her car, an older model 4-door Chevrolet. When complainant was unable to remove the infant seat which was secured to the front seat with seat belts, the kidnapper used a knife to cut the seat belts and threw the infant seat into the back seat of the car. He then ordered complainant to sit in the passenger seat and told her not to look at him. He got into the driver's seat and drove out of the parking lot, keeping his hand on the knife the entire time. They drove around for awhile until the kidnapper ordered complainant to drive. At this point, he sat in the back seat holding both his gun and his knife on her, giving her directions. Finally, the kidnapper told complainant to drive into the parking lot of the Willow Tree Apartments on Robinson Road.

Upon entering the parking lot, the kidnapper told complainant to pull up by a

trash dumpster. The kidnapper then exited the car and told complainant to "get out of here." She drove back to her apartment building where she used a neighbor's telephone to summon the police. Complainant later identified appellant as the man who had kidnapped her.

Various police officers testified as to the surveillance and arrest of appellant. Leighton Anderson, a police officer for the City of Fort Worth, testified that on the evening of January 7, 1983, he and other police officers from Fort Worth and Arlington were conducting an undercover surveillance of appellant and were in unmarked police cars in a parking lot of the Willow Tree Apartment complex in the 1800 block of Robinson Road in Grand Prairie. At approximately 11:30 p.m., they observed appellant drive into this parking lot in a blue Mustang. Appellant sat in the car for several minutes and then got out of the car and ran to Robinson Road. He then walked across the street into the alley behind some houses at which time the officers lost sight of him. Anderson and the other officers in his vehicle stayed at the apartment complex and waited for appellant's return.

At approximately 3:00 a.m., Anderson observed an older model Chevrolet 4-door pull into the parking lot, heard a car door slam, and observed someone standing by the car. The Chevrolet then drove off. Several minutes later, Anderson received a radio call from another police unit. He then placed appellant, who was standing next to his car, a blue Mustang, under arrest. A .38 caliber pistol was found between the seats and a wooden handled lock blade knife was recovered from appellant's person. Using State's exhibit no. 14, a map of Grand Prairie, Anderson pointed out the location of the parking lot where appellant was arrested and testified that Wellington Drive ran parallel to Robinson Road.

Patsy Williams, also a Fort Worth police officer, testified that she, another police officer, and an assistant district attorney, were part of the surveillance team which was in the Grand Prairie neighborhood where appellant lived on the night of January 7. She testified that as her unit drove down the paved alley behind the 2000 block of Wellington, they observed a man lying under a gazebo in the backyard of the McDonald residence located at 2033 Wellington. As they turned around at the end of the alley, they advised other police officers in the area of what they had seen. They then went back to the McDonald residence and spoke with Loretta McDonald.

Richard Hill, an Arlington police officer, along with his partner, was also working surveillance in Grand Prairie on the night of January 7. Hill testified that while they were in the 2000 block of Wellington, they began looking for a man wearing a blue hooded sweatshirt, blue jeans, blue tennis shoes with white soles, and a blue baseball cap. As Hill parked his unmarked squad car in the 2000 block of Wellington, he observed a suspect wearing clothing matching this description and wearing a cloth mask run from between the houses located at 2033 and 2029 Wellington and then observed this man run across the street behind the squad car. As the suspect started across the street the officer shouted, "Halt, police." Upon hearing this, the suspect began running toward the Willow Tree Apartments. The officers pursued the suspect on foot but lost contact with him. At approximately 3:00 a.m., Hill and his partner, in response to a police radio dispatch, drove to the parking lot of the Willow Tree Apartments and observed the appellant being placed under arrest. The appellant, who was the same suspect as seen earlier, was trying to reach into a blue Mustang and was struggling with the arresting officer.

Katherine Ward, a Fort Worth police officer, was at the Willow Tree Apartment parking lot at 11:30 p.m. on January 7 when the blue Mustang arrived. She testified that at approximately 3:00 a.m. on January 8, she observed another car enter the parking lot, heard a car door slam, and then saw the suspect they were searching for come around one of the buildings and walk to the blue Mustang. The suspect

then went to the Mustang, put a blue sweatshirt inside the car, sat down for a minute and then got out of the car. At this point, Ward and other officers approached the suspect and attempted to arrest him. A struggle ensued when the suspect attempted to reach into his car. Ward identified appellant as the man they arrested.

Appellant contends, in grounds of error three and four, that the evidence is insufficient to support a verdict based on appellant's flight from an attempted burglary and that the trial court erred in submitting a charge on flight as an aggravating factor. The trial court's charge to the jury tracked the indictment and authorized the conviction for aggravated kidnapping if the jurors found that the kidnapping was committed "with the intent to facilitate the flight after the attempted commission of a felony, to wit: the burglary of the habitation of Loretta McDonald." The charge also included instructions on the lesser included offense of kidnapping.

TEX.PENAL CODE ANN. sec. 30.02 (Vernon 1974) states, in pertinent parts, as follows:

(a) A person commits an offense if, without the effective consent of the owner, he:

(1) enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony or theft;

* * * * * *

(b) For purposes of this section, "enter" means to intrude:

(1) any part of the body; or

(2) any physical object connected with the body.

*Id.* Further, TEX.PENAL CODE ANN. sec. 30.01 (Vernon 1974) provides the following pertinent definitions:

(1) "Habitation" means a structure or vehicle that is adapted for the overnight accommodation of persons, and includes:

(A) each separately secured or occupied portion of the structure or vehicle; and

(B) each structure appurtenant to or connected with the structure or vehicle.

(2) "Building" means any enclosed structure intended for use or occupation as a habitation or for some purpose of trade, manufacture, ornament or use.

*Id.*

■ TEX.PENAL CODE ANN. sec. 15.-01(a) (Vernon Supp.1986) defines criminal attempt as follows:

(a) A person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended.

*Id.* Therefore, the elements necessary to establish the offense of criminal attempt are (1) a person, (2) with specific intent to commit an offense, (3) does an act (amounting to [resulting in] more than mere preparation), that (4) tends, but fails, to effect the commission of the offense intended. *See McCravy v. State*, 642 S.W.2d 450, 459 (Tex.Crim.App.1982) (opinion on reh'g). In *McCravy*, the Court of Criminal Appeals held that "turning off electrical power" and "climbing to the roof" of a building were sufficient allegations of fact to lead to the legal conclusion that the defendant committed acts amounting to more than mere preparation that tended but failed to effect the commission of burglary. *Id.* at 460. In footnote 2, the Court further stated, in pertinent parts, the following:

While we adhere to Judge Clinton's partial overruling of *Green* ..., we not only find it possible that an accused could be convicted of attempted burglary on a showing that *he reached toward a door with intent to commit burglary, we find it equally possible that an accused could be convicted on a showing of much less* as long as the alleged acts "tended to effect the commission of a burglary," rather than requiring the acts to "tend to intrude" as stated by our original opinion.

[Emphasis added.] *Id. n. 2. See also Flournoy*, 668 S.W.2d at 383. (Complain-

ant's testimony that defendant banged on the door of her mobile home and then reached his hand through screen door in an effort to get to main door, was sufficient evidence upon which a rational trier of fact could have found that defendant committed the essential elements of the offense of attempted burglary.)

■ In the instant case, the State's evidence established that appellant bent the wrought iron bars of the patio enclosure at the McDonald's house, procured an axe from the patio, and positioned himself by the door to the garage attached to the house holding the axe in a manner which indicated that he was prepared to use it to gain entrance to the garage. At this point, appellant was interrupted by the screams of McDonald, whereupon he fled the scene. Based on the above authority, we hold this evidence sufficient to support a verdict based on appellant's flight from an attempted burglary. Accordingly, appellant's ground of error three is overruled. Since the evidence is sufficient to support the verdict on this ground, the trial court did not err in submitting a charge on flight as an aggravating factor. Therefore, appellant's ground of error four is overruled.

Grounds of error five through eight concern the sufficiency of the evidence to support the jury verdict of aggravated kidnapping. TEX.PENAL CODE ANN. sec. 20.04 (Vernon 1974) sets forth the elements of aggravated kidnapping and provides, in pertinent parts, as follows:

> (a) A person commits an offense if he intentionally or knowingly abducts another person with the intent to:
>
>   *    *    *    *    *    *
>
> (3) facilitate the commission of a felony or the flight after the attempt or commission of a felony; or
>
>   *    *    *    *    *    *
>
> (5) terrorize him or a third person;
>
>   *    *    *    *    *    *
>
> (b) An offense under this section is a felony of the first degree unless the actor voluntarily releases the victim alive

and in a safe place, in which event it is a felony of the second degree.

*Id.* Further, "abduct" is defined as a "means to restrain a person with intent to prevent his liberation by: ... using or threatening to use deadly force." TEX.PENAL CODE ANN. sec. 20.01(2)(B) (Vernon 1974). Finally, "restrain" is defined as follows:

> (1) "Restrain" means to restrict a person's movements without consent, so as to interfere substantially with his liberty, by moving him from one place to another or by confining him. Restraint is "without consent" if it is accomplished by:
>
> (A) force, intimidation, or deception;
>
> . . .

TEX.PENAL CODE ANN. sec. 20.01(1)(A) (Vernon 1974).

■ The indictment also included in its allegation that the appellant had committed the kidnapping with "intent to terrorize" Kiser and the trial court's charge authorized a conviction for aggravated kidnapping on this alternative theory of aggravation. In grounds of error five and six, appellant challenges the sufficiency of the evidence of abduction to terrorize the complainant and contends that the trial court erred in charging the jury on that theory. Specifically, appellant asserts that complainant's testimony that she was put in fear of serious bodily injury by the appellant's repeated exhibition of the revolver and a knife, cannot, standing alone, constitute sufficient evidence of an intent to terrorize her. We disagree.

The Texas Penal Code does not specifically define "terrorize." However, the authors of the Practice Commentary of TEX. PENAL CODE ANN. sec. 20.04 (Vernon 1974) address this problem:

> Moreover, the definition of "abduct" in Section 20.01, which is an element of both kidnapping and aggravated kidnapping, covers conduct that itself transforms Section 20.03 kidnapping into Section 20.04 aggravated kidnapping—for example, *restraint at gunpoint would no doubt terrorize the victim*.... [Emphasis added.]

*Id.* Further, TEX.PENAL CODE ANN. sec. 22.07(a)(2) (Vernon Supp.1986), entitled "Terroristic Threat" provides that:

(a) A person commits an offense if he threatens to commit any offense involving violence to any person or property with intent to:

\*    \*    \*    \*    \*    \*

(2) place any person in fear of imminent serious bodily injury; ...

*Id.*

In determining whether appellant intended to terrorize the complainant, we may look at his actions, as one's acts are generally reliable circumstantial evidence of one's intent. *See Rodriquez v. State,* 646 S.W.2d 524, 527 (Tex.App.—Houston [1st Dist.] 1982, no pet.). The evidence adduced at trial regarding appellant's actions is as follows. Appellant's abduction of the complainant began in the apartment parking lot when he forced her at gunpoint to go into her apartment. While in the apartment, appellant forced the complainant to awaken her boyfriend. After leaving the bedroom, and while pointing the gun at her, appellant stated "he [her boyfriend] could have been shot." The complainant was then forced into her car at gunpoint. Appellant and complainant drove around for approximately fifteen minutes, during which the complainant was held either at knifepoint or at gunpoint.

We hold that the fear of anticipated infliction of imminent bodily injury or death caused by the ordeal was sufficient to indicate that appellant intended to terrorize the complainant after she was abducted. Accordingly, appellant's ground of error five is overruled. Further, since we hold the evidence sufficient to support the jury verdict of aggravated kidnapping on the basis of intent to terrorize the complainant, the trial court did not err in submitting a charge thereon. Ground of error six is overruled.

■ Finally, in grounds of error seven and eight, appellant contends that the evidence of abduction to facilitate flight is insufficient and that the trial court erred in submitting a charge on the same.

Specifically appellant asserts that, assuming he did commit the attempted burglary at the McDonald residence, that episode ended some three hours before the abduction and was separated in distance by a mile. He therefore maintains that an immediate need to use a shield for escape vanished in the interim.[1] In fact, appellant contends that his abduction of complainant was merely an attempt to get back to his car expeditiously. Further, he alleges that there is no proof that, at the time of the abduction, the police were in pursuit of him.

The evidence at trial reflects that appellant was seen at the McDonald residence shortly before midnight. Complainant testified that her abduction began at approximately 2:45 a.m. and ended at approximately 3:00 a.m. Therefore, there was, as appellant asserts, approximately a two and one-half hour period from the time appellant was seen at the McDonald's house and the time the abduction was initiated. However, the testimony of the various police officers, as set forth above, establishes that appellant was under surveillance almost continuously from approximately 11:30 p.m. until the time of the abduction. Also, it is to be remembered that appellant had fled the scene of the attempted burglary when McDonald started screaming.

We hold the evidence sufficient to support the jury verdict of abduction to facilitate flight and therefore the trial court did not err in submitting a charge thereon. Accordingly, grounds of error seven and eight are overruled.

Judgment affirmed.

---

**1.** Although appellant uses this language, we note that he was *not* charged with abducting the complainant with the intent to use her as a shield or hostage, *see* TEX.PENAL CODE ANN. sec. 20.04(a)(2) (Vernon 1974); but was instead convicted under subsecs. (3) and (5) of the aggravated kidnapping statute.