

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-11-00605-CR

Wesley Eugene **KALKA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 198th Judicial District Court, Kerr County, Texas
Trial Court No. B10-740
Honorable M. Rex Emerson, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Karen Angelini, Justice
Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  May 22, 2013

AFFIRMED

Wesley Eugene Kalka appeals his conviction for failure to register as a sex offender. He brings two issues on appeal: (1) the trial court erred in refusing to grant a mistrial when the State, while cross-examining Kalka, warned him of his fifth amendment privilege against self-incrimination and then asked him a question knowing he would invoke the privilege; and (2) the State engaged in improper jury argument by injecting harmful facts outside the record. We affirm.

### FIFTH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION

On appeal, Kalka argues that the trial court erred in denying his motion for mistrial. Specifically, Kalka complains of "the State requesting, in the jury's presence that [Kalka] be admonished of his fifth amendment privilege against self-incrimination" and then "questioning [Kalka] knowing that he would assert his fifth amendment privilege."

Kalka, a convicted sex offender, was required under article 62.055 of the Texas Code of Criminal Procedure to register his address if he resided more than seven days at a location. *See* TEX. CODE CRIM. PROC. ANN. art. 62.055 (West Supp. 2012). The State indicted Kalka for failure to register his address at the Kerrville Plaza Apartments in violation of article 62.055. The State did not charge Kalka under article 62.059, which requires a sex offender to report to law enforcement when he spends more than forty-eight consecutive hours on at least three occasions during any month in a municipality or county other than where he is registered. *See* TEX. CODE CRIM. PROC. ANN. art. 62.059 (West 2006).

During trial, Kalka exercised his right to testify in his own defense. In his direct testimony, he testified that he had discussed his right not to testify with his counsel and that he understood he would be subject to cross-examination by the State. When asked where he lived, he gave an address, but then stated he would spend "four, maybe five days at a time" at the Kerrville Plaza Apartments, and then go home. Kalka testified that he never spent seven days at the Kerrville Plaza Apartments because he knew that would get him into trouble.

It is apparent from the record that the State became concerned about the fact that Kalka, although denying he had violated article 62.055 (the seven-day provision for which he had been indicted) had potentially admitted in his direct testimony to violating article 62.059 (the forty-eight-consecutive-hour provision for which he had not been indicted). Thus, the following exchange occurred immediately after Kalka's direct testimony:

DEFENSE: I pass the witness.

STATE: Your Honor, the State would request Your Honor to advise the Defendant of his rights or the State can advise.

COURT: Counsel approach, please.

[Proceedings at bench out of hearing:]

COURT: Mr. Pickell, hadn't you already made a record advising your client of his rights?

DEFENSE: Yes.

STATE: I want him to advise him of his rights, as well.

DEFENSE: Well, I would object. I think that would be prejudicial to do that in front of the jury. He has taken an oath just like everybody else.

STATE: I think we've got the right to advise him that he's about to admit to a new crime.

COURT: I don't think you can say that.

STATE: I think we can.

COURT: I think you can tell him he's got a fifth amendment right to remain silent, if you'd like, and he can waive that right.

STATE: I'll do that.

[In open court:]

[Cross-Examination]

STATE: Mr. Kalka, my name is Brad McCullouch. I'm the Assistant District Attorney for the 198th Judicial District. Do you understand you have the     right to remain silent - - -

KALKA: Yes, sir.

STATE: - - - during the court proceeding?

KALKA: Yes, sir.

STATE: That anything you say can and will be used against you in a future case should you say something incriminating?

KALKA: Yes, sir.

STATE: Okay. I want to get that clear with you right now.

DEFENSE: Your Honor, may we approach?

[Proceedings at bench out of hearing:]

DEFENSE: I don't know what this is about, but if that's the case, then I believe the Defendant would exercise his right.

STATE: He's got that right. He's got that right. That's why I did it. We want to play fair ball. He's about – he's about to admit to another statute that he's violated.

D.A. Investigator: Actually, he already has.

STATE (second attorney): He already has.

COURT: Why don't you take two minutes and go over there and confer with your client and then we'll start it up again.

[Defense counsel conferring with Defendant off the record.]

[In open court:]

COURT: All right, you may proceed.

STATE: May I approach the witness, Your Honor?

COURT: Mr. Pickell [defense counsel]?

DEFENSE: Your Honor, in response to the District Attorney's most recent statement to the Defendant, the Defendant would, in fact, assert his right at this time.

STATE: Okay.

COURT: Mr. Pickell, is that for all questioning or just for cross-examination or is - - I guess, does it relate to the cross-examination of his previous testimony or to any additional questioning or, in general, to everything?

DEFENSE: May we approach?

[Proceedings at bench out of hearing:]

DEFENSE: This is kind of weird.

STATE: But you see what I'm doing, Steve? I don't want to sneak up on your guy and get him to verbally admit to the statute, and we've got this code section where it talks about if you stay for three consecutive days, there's another violation of the reporting requirements under the law, and we - - I don't know. We could probably charge him right now with that, but - - so it's up to you.

DEFENSE: Well, if I can, then, I would urge that he is asserting his fifth amendment right to any further questioning, but I did put him up on the witness stand.

STATE: Your Honor, the State wants to do the right thing here. I've got plenty of questions to ask him. I do think if the Defendant is invoking his right to remain silent, he can do so at any time. It probably looks bad on him in front of the jury to testify and then invoke his right to remain silent, but I don't have a case on point that says you can't do that. I think he can do it any time.

[Discussion between State's counsel off the record.]

STATE: I do, I do, I understand, but, you know, if you want to invoke your rights, that's fine if you want to do it on every question, whatever the Court want to do.

COURT: Let me ask you what you want to do. If you want to ask your questions, you've got the right to ask your questions on cross.

D.A. INVESTIGATOR: Right.

COURT: And he's got a right to claim the Fifth on each one.

STATE: Okay.

COURT: Or you can just waive it all and you can have him sit down, but it's your call. He's on cross.

STATE (second attorney): You can ask the questions.

STATE: All right. I'll probably ask the questions, but . . .

[State's counsel conferring off the record.]

STATE: We'll do that, then, Your Honor. We'll move forward and ask him some questions and, I guess, procedurally, he needs to invoke his fifth amendment right to remain silent. So you probably ought to tell him that right to remain silent.

DEFENSE: Can I have a minute to confer with him?

COURT: You may.

DEFENSE: Can we go back to the counsel table for a moment?

COURT: I'm sorry?

DEFENSE: Can we go back to the counsel table for a moment?

COURT: You may.

[Defense counsel and Defendant conferring off the record.]

STATE: Your Honor, may we proceed?

COURT: You may in just a moment.

[Defense counsel and Defendant conferring off the record.]

DEFENSE: I need to borrow one of these exhibits.

[Defense counsel and Defendant conferring off the record.]

DEFENSE: May we approach, Your Honor?

COURT: You may.

[Proceedings at bench out of hearing:]

DEFENSE: Could we have a brief recess so that I can confer with the State?

STATE: Well, Your Honor, we're ready to move forward. I mean, it's – it's 11:40. It's almost lunchtime. We'd like to get this thing knocked out.

DEFENSE: I understand.

COURT: Well - - -

DEFENSE: I'm familiar with the seven-day requirement. We need to talk.

STATE: I can't tell you - - -

DEFENSE: - - - or I'll be building ineffective assistance of counsel.

STATE: I can't - - the most effective counsel that you can give right now would be to say don't answer any questions and don't allow me to sit there and ask any questions. I'd love to do it, if you let me, so maybe we can agree you'll let me ask him two or three questions and then I'll stop.

COURT: Let me ask you – Let me ask you just procedurally, where do we stand? Any more witnesses coming?

DEFENSE: I have no further witnesses.

STATE We may call Ledford in rebuttal for five minutes. We could be through by - - -

COURT: Well, I'm just thinking what if we cut them loose for lunch, y'all can conference, then we can come back and finish it out.

STATE: We're ready to move forward, Judge. I think we can get this thing to the jury by lunch.

COURT: Well, Mr. Pickell is telling me he needs to confer with you to avoid ineffective assistance claims, so there's no reason to build error into the record. Five minutes? Ten minutes?

DEFENSE: I guess five or ten minutes.

STATE: Can we take five minutes?

DEFENSE: That's fine.

COURT: Why don't ya'll step out in the hallway and confer.

[State and Defense counsel exit courtroom.]

* * *

[Cross-Examination of Kalka]

STATE: So, Mr. Kalka, isn't it true that you stayed at the Plaza Apartments the entire month of October?

KALKA: I'm going to assert my right not to incriminate myself.

STATE: No more questions, Your Honor.

COURT: Mr. Pickell?

DEFENSE: No further question. The Defendant rests.

Later, as the trial court prepared to consider the proposed charge, the following occurred:

DEFENSE: Your Honor, before we start with the Charge, the Defendant would move for a mistrial, the basis being that the State, in commencing to admonish the

Defendant as to his Fifth Amendment rights, in the first place, that is not a function of the State, but rather would be of the court or his counsel, has basically tainted this jury by intimating that there is another offense for which the Defendant can be charged or that the Defendant has committed, and because of that, this jury is tainted. So we would move for a mistrial.

STATE: And our response would be, Your Honor, that when we approached the bench on the – just the issue, there was no objection, there was just a request to approach, first of all, so the objection is untimely for a mistrial. There was no objection made when I informed the Defendant that he had the right to remain silent. We merely approached the bench and Defense counsel did not object to me doing that at the time, so now it's a moot point. But, in any event, the State certainly is allowed, if the State knows that – that a witness – Defendant or witness is about to commit perjury or confess to a crime, that Defendant – the State can advise that person of their full rights, not just the right to remain silent.

COURT: The motion for mistrial is denied.

On appeal, Kalka argues that his motion for mistrial should have been granted because the State should not be allowed in the jury's presence to admonish him of his fifth amendment right against self-incrimination and then question him, knowing that he would assert his rights under the Fifth Amendment. The Fifth Amendment provides that "[n]o person … shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. A defendant can, however, voluntarily forfeit his right against self-incrimination under the Fifth Amendment if he freely chooses to take the stand and make incriminating statements. *Johnson v. State*, 357 S.W.3d 653, 658 (Tex. Crim. App. 2012). Thus, as a general rule, a defendant who chooses to testify is subject to being examined and cross-examined like any other witness. *Kos v. State*, 15 S.W.3d 633, 642 (Tex. App.—Dallas 2000, pet. ref'd) (citing *Cantu v. State*, 738 S.W.2d 249, 255 (Tex. Crim. App. 1987)). Therefore, a defendant who elects to take the stand may be "contradicted, impeached, discredited, attacked, sustained, bolstered, [and] made to give evidence against himself" unless there are "'overriding constitutional prohibitions' that justify an exception to the general rule." *Id.* at 642-43 (quoting *Cantu*, 738 S.W.2d at 255). Allowing the State to cross-examine a defendant on uncharged conduct that could potentially lead to further

prosecutions, however, does not implicate any "overriding constitutional prohibition" that would justify an exception to the general rule. *Id.* at 643. Indeed, there is no authority that would allow a defendant to take the stand, waive his fifth amendment rights, testify in his own defense, but limit the State's right to cross-examine him on any "uncharged extraneous conduct" based on the argument that such cross-examination would infringe on the fifth amendment rights he has chosen to waive by taking the stand. *Id.*

Here, Kalka argues that although he waived his fifth amendment privilege when he elected to testify, the parties operated under the assumption that he could assert his rights under the Fifth Amendment at any time. In other words, both the prosecution and defense attorney were mistaken in their treatment of the situation. And, according to Kalka, once this occurred, the situation should be likened to one in which the State calls a witness to testify, knowing the witness will invoke his right against self-incrimination under the Fifth Amendment, but persists in asking damaging questions of the witness. Kalka cites as authority *Vargas v. State*, 442 S.W.2d 686 (Tex. Crim. App. 1969), and *Coffey v. State*, 796 S.W.2d 175 (Tex. Crim. App. 1990). These cases relied on by Kalka, however, are distinguishable as both cases involve *the State* calling a witness as opposed to *the defendant* taking the stand to testify on his own behalf. *See Vargas*, 442 S.W.2d at 687; *Coffey*, 796 S.W.2d at 177-78. And, Kalka cites no authority that would extend the rules applicable to a witness called by the State to a defendant who chooses to testify on his own behalf. Interestingly, the *Coffey* case, upon which Kalka relies, cites to a federal case, *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978), which concerned a factual situation similar to Kalka's. *See Coffey*, 796 S.W.2d at 178 (citing *Beechum*, 582 F.2d at 909).

In *Beechum*, 582 F.2d at 907, the defendant took the stand to testify in his own defense, but when the prosecution asked him questions that would result in him admitting to an extraneous offense, he invoked his rights under the Fifth Amendment. In considering the

defendant's argument that he was unduly prejudiced by having to assert his right against self-incrimination repeatedly, the Fifth Circuit explained that a defendant who takes the stand on his own behalf waives his fifth amendment right against self-incrimination. *Id.* at 908-09. The Fifth Circuit concluded that the trial court had actually erred in favor of the defendant – it had allowed the defendant to invoke the Fifth Amendment and avoid responding to the prosecution's questions. *Id.* at 909. Therefore, the Fifth Circuit rejected the defendant's contention that he was unduly prejudiced by having to assert the privilege repeatedly. *Id.*

Kalka's situation is similar to the facts presented in *Beechum* in that, although Kalka waived his fifth amendment right by taking the witness stand, he was erroneously allowed to assert his right against self-incrimination under the Fifth Amendment in response to the prosecution's questions. And, although Kalka claims the State "created the scenario and exploited the scenario to the State's benefit by compelling Appellant to urge his Fifth Amendment privilege in front of the jury," it is apparent from the record that both the State and defense counsel were proceeding under a mistaken impression that Kalka, by taking the witness stand, had not waived his fifth amendment right against self-incrimination. There is nothing in the record from which we can infer that the State acted intentionally in order to prejudice Kalka. We therefore hold the trial court did not err in denying Kalka's motion for mistrial.

Further, even if the trial court had erred, Kalka waived such error by failing to timely object. In order to preserve error, an appellant must make a timely and specific objection into the trial court record. *See* TEX. R. APP. P. 33.1(a); TEX. R. EVID. 103(a)(1). The error on appeal must comport with the objection made at the trial court. *Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004). And, to be considered timely, the objection must be made to the trial court as soon as the ground for the complaint is apparent or should be apparent. *Aguilar v. State*, 26 S.W.3d 901, 905 (Tex. Crim. App. 2000). Although, as set forth in the above-quoted excerpt

from the record, there was extensive discussion among the prosecution, defense counsel, and the court regarding Kalka's invoking his right against self-incrimination under the Fifth Amendment, Kalka did not object when the State asked him the question of which he now complains. It was not until later, during the charge conference, that Kalka specifically objected that his invocation of his rights under the Fifth Amendment tainted the jury and therefore that he was entitled to a mistrial. In fact, not only did Kalka fail to timely object, but he acquiesced to the State's suggestion that he invoke his rights under the Fifth Amendment. Having acquiesced, he cannot now complain on appeal. *See Lemos v. State*, 27 S.W.3d 42, 47 (Tex. App.—San Antonio 2000, pet. ref'd); *Jernigan v. State*, 706 S.W.2d 813, 816 (Tex. App. — Fort Worth 1986, pet. ref'd). We therefore overrule Kalka's first issue on appeal.

### CLOSING ARGUMENT DURING PUNISHMENT PHASE

In his second issue, Kalka complains that the State's jury argument during the punishment phase of trial was improper because it injected facts outside the record that were harmful to him. Proper jury argument generally falls within one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to an argument of opposing counsel; and (4) a plea for effective law enforcement. *Freeman v. State*, 340 S.W.3d 717, 727 (Tex. Crim. App. 2011). A defendant's failure to object to a jury argument or a defendant's failure to pursue his objection to an adverse ruling forfeits his right to complain about the argument on appeal. *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996). Where the State's argument is improper, and the trial court sustains the objection and grants a requested instruction to disregard, the proper issue then becomes whether the refusal to grant a mistrial was an abuse of discretion. *Hawkins v. State*, 135 S.W.3d 72, 76-77 (Tex. Crim. App. 2004).

Specifically, Kalka complains of the following argument made to the jury by the State during the punishment phase:

So, he's making – he has made a mistake. He's accepted responsibility; right? Wait, when did having some kind of sexual contact with a twelve-year-old boy constitute a mistake? That is an intentional criminal offense under the law of the state of Texas. That's no mistake. Don't talk to me about a mistake when it comes to molesting a little twelve-year-old.

DEFENSE: Your Honor, I'm going to object. There's no evidence beyond a reasonable doubt which the jury can find any kind of contact with a twelve-year-old.

STATE: Well, we had Investigator Ledford testify to it and it's in evidence.

COURT: You may proceed.

STATE: And don't talk to me about taking responsibility, either, because we heard how many witnesses get up here and say that he's said he didn't do the crime. Now, I'm not talking about the one that he's on trial for today, was on trial. I'm talking about the original crime. So he's going around saying, no, I didn't do it. Now, I have a duty to register. I've got to register, but I didn't do the crime. So, no, no, no, no, that's somebody that has not taken responsibility, has not learned the lesson that you've got to learn, and if you'll look, disgraceful that the man only served — you'd have to match up the documents, but he only served seven months in the penitentiary on the previous charge.

DEFENSE: Objection, that's contrary to the evidence.

STATE: Well, Your Honor, it's in evidence. This is the evidence. Okay, I'll let go of that. Another thing, this model citizen stuff, number one, somebody that molests little boys are not model citizens; but, remember the deputy from Bandera, the police officer from Bandera, when he was asked about the questions has he been, you know, a model registrant or whatnot, and he said, no, I had to track the guy down, call him on the telephone, all of that stuff? And I hope y'all read this thing. Back in '05, notified Investigator Ledford that he was staying in Kerrville at his sister's house and he had been there for a week.

DEFENSE: Objection, that a misstatement of the evidence.

STATE: Your Honor, its right here in the evidence that I'm reading.

DEFENSE: And you're misstating it.

STATE: "Notified by Inv. Ledford, Kerr Co. S.O. that Wesley Kalka was staying in Kerrville at his sister's house Nov. 23rd he had been there one week." Okay. So y'all heard of three strikes and you're out? The first strike: By perpetrating on a twelve-year-old relative.

DEFENSE: Objection, counsel is going outside the evidence.

- 12 -

STATE: Your Honor, it's in the documents that are in evidence.

COURT: You may proceed.

STATE: Strike one. Strike two, back in Bandera when he left Bandera and didn't notify Bandera or Kerr County. He got — he skated on that one. He got lucky, I guess. This is number three.

DEFENSE: Objection. There's no evidence beyond a reasonable doubt that that ever took place.

STATE: Now, this case really comes down to the word call "taking." Okay? "Taking." What this Defendant has done, he took something from a twelve-year-old little boy and he's also taken something from the citizens of Kerr County. He's taken the ability for the citizens of Kerr County to be free from sex offenders roaming about the streets, not knowing who's around. He's taken the decision that — he's taken the power away from the citizenry and saying I can be the judge of where I go and who I report to when I report out of the citizens' hands. Think about all the little kiddos that were at that apartment complex he was at going to the — sending your two-and-a-half-year old or going to the pool with your two-and-a-half-year-old or sending your six-year-old to the pool.

DEFENSE: Objection, counsel is going outside the evidence.

STATE: This is argument, Your Honor.

COURT: I'll sustain that one.

STATE: So obviously —

DEFENSE: Ask that the jury be instructed to disregard.

COURT: Please disregard any statements to the two-and-a-half-year-old or the six-year-old proceeding through the apartment complex.

DEFENSE: And request a mistrial.

COURT: Overruled.

STATE: And I'd like you to — thank you, Your Honor . . . ."

In his brief, Kalka points to two specific areas of the above-quoted jury argument that he argues inject prejudicial facts outside the record: (1) that Kalka only served seven months out of the four-year sentence originally assessed in the underlying offense of indecency with a child;

and (2) that the jury should consider "all the little kiddos that were at that apartment complex he was at going to the — sending your two-and-a-half-year-old going to the pool with your two-and-a-half-year-old or sending your six-year-old to the pool."

With regard to the first complaint pertaining to the amount of time Kalka served for the underlying offense, Kalka failed to preserve this complaint for appeal. As is apparent from the above-quoted excerpt from the State's closing argument, when the State argued that Kalka had only served seven months, Kalka's attorney stated, "Objection, that's contrary to the evidence." The trial court never ruled on Kalka's objection, nor did Kalka pursue a ruling. Therefore, Kalka failed to preserve this complaint for appeal. *See Cockrell*, 933 S.W.2d at 89 (holding defendant's failure to object to jury argument or to pursue to an adverse ruling his objection to a jury argument forfeits his right to complain about the argument on appeal).

With regard to Kalka's second complaint regarding the prosecution's statement about "kiddos that were at that apartment complex" going to the pool, Kalka did object that it was outside the evidence. The trial court sustained the objection, instructed the jury to disregard the statement, and overruled Kalka's request for a mistrial. Assuming without deciding that the jury argument was improper, the issue then becomes whether the trial court abused its discretion in refusing to grant a mistrial. *See Hawkins*, 135 S.W.3d at 76-77. However, Kalka has not on appeal complained that a mistrial should have been granted. He argues only that the argument was improper and prejudicial. Nevertheless, even if the argument was improper, any error was cured by the trial court's instruction to disregard. *See Livingston v. State*, 739 S.W.2d 311 (Tex. Crim. App. 1987) (explaining that instruction to disregard normally cures error, except in extreme cases where it appears the evidence is clearly calculated to inflame the mind of the jury and the conduct is of such a character as to suggest the impossibility of withdrawing the

impression produced on the jurors' minds). We find no error, and therefore overrule Kalka's second issue on appeal.

Having overruled both issues, we affirm the judgment of the trial court.


Karen Angelini, Justice

Do not publish