# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00774-CR

---

**Jorge Torres, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE 403RD DISTRICT COURT OF TRAVIS COUNTY**
**NO. D-1-DC-22-205639, THE HONORABLE BRANDY MUELLER, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Jorge Torres of attempted aggravated kidnapping. *See* Tex. Penal Code §§ 15.01, 20.04(a)(3). The jury assessed punishment at 4½ years' imprisonment, and the district court sentenced Torres accordingly. On appeal, Torres contends that there was insufficient evidence showing that he had the specific intent to (1) abduct another and (2) commit a statutory aggravating manner-and-means element in the aggravated-kidnapping statute. We will affirm the district court's judgment of conviction.

## BACKGROUND

Torres was charged with the attempted aggravated kidnapping of Elijah Akeem Cummings. The jury heard that the charged offense occurred during a rapid succession of same-day events at three addresses in Austin. A map admitted into evidence shows the

proximity of the addresses on Garwood Street, Zaragosa Street, and Webberville Road, where police arrived after receiving 9-1-1 calls:



All the events occurred minutes apart. The first event involved Brian Zanti. Zanti testified that he was in his Toyota Camry and making a U-turn while pulling away from his house on Garwood Street when something hit his windshield. He stopped the car and put it in park when he saw a shirtless man approaching and trying to get his attention. The person was a little taller than Zanti, with darker skin, curly hair, and a scraggly beard. Zanti had seen an old red truck with its hood popped up on his street, and he thought someone was working on the truck, but he had not seen this person.

2

Zanti rolled down his window and asked, "Do you know what happened?" The man, later identified as Torres, said, "You know what happened," and became aggressive, started cursing, and speaking nonsense. Torres reached through the open window and pulled the door handle, opening the driver's-side door. While this was happening, Zanti was "very shocked" and remained seated in his car with the seat belt fastened and the car running. Torres was then able to reach down and pull the interior lever that opened the trunk. Torres went to the trunk of Zanti's car, removed a tire iron, and left the trunk open as he returned to the front of the car. Raising the tire iron, he said, "Get out of the car or I'll beat your ass." Zanti complied with the threat, noting that Torres was standing close enough to hit him with the tire iron. Torres then told Zanti, "Get in the trunk or I'll beat your ass." Zanti declined. Torres grabbed Zanti's glasses off his face and again demanded that he get into the trunk. Zanti said he could not do that without his glasses. Torres did not return the glasses but told Zanti that he could have them back if he got into the trunk. Zanti tried thinking of a way out of the situation and expected that he "would be pretty helpless without [his] glasses," but he took his keys and started walking back toward his house, still worried that Torres was going to strike him with the tire iron. Once inside, Zanti locked his door, called police, and looked for his spare pair of glasses because Torres never returned the ones that Zanti was wearing. Zanti saw Torres leave in the red truck, honking and "hooting and hollering" as he drove away.

The second event involved Elijah Akeem Cummings, the victim named in the indictment. Cummings testified that on the date in question, he was working as an Uber Eats driver and had left his Toyota Corolla parked and running with the keys inside while he made a contactless delivery to the front door of a house on Zaragosa Street. When he made the delivery, he heard a "bang," turned around, and saw that a red Dodge Ram truck had hit his car. He

3

noticed the hood of the truck was "kind of flying open, flopping." Before the collision, Cummings heard the truck's horn honking from a distance, but he had never seen that particular truck and did not think the honking had anything to do with him. A neighbor's front-door video camera across the street recorded the events, and that video was admitted into evidence.

The video shows Cummings approaching in a white car from the right, parking in front of a residential driveway, retrieving a bag from the car as honking sounds start, and walking toward the house with the bag. A red truck with its hood ajar approaches from the opposite direction, slows, veers left, and hits the front of Cummings's car. The truck's tires spin and emit a cloud of smoke as the truck pushes against the parked car. The driver of the truck gets out, but that side of the truck is not facing the camera. Moments later, Cummings and the other man, who is wearing a hat, appear near the trunk of Cummings's car. There is yelling as they physically struggle. Cummings moves toward the driver's side of the car, but the other man reaches for the door handle first and opens the driver's-side door. In the small space between the open car door and the driver's seat, Cummings and the other man continue physically struggling. Eventually, Cummings separates himself from the other man and gets into the driver's seat. The other man leaps onto the hood of Cummings's car, hops down, and gets inside the truck. Cummings backs his car away, and it remains in reverse as it travels beyond the camera's view. The truck follows, accelerating loudly.

Cummings testified that during the altercation, the other man—later identified as Torres—was swearing at Cummings and telling him to "get into the trunk." Cummings's car had a trunk, but Torres's truck had only a bed. Cummings disputed the defense's suggestion that there was no way to get into the trunk of his car without turning it off and taking the keys out. He clarified that the trunk of his car could be opened by pulling a lever inside. But because

4

Torres had pushed Cummings toward the car door and held Cummings's neck, Cummings was standing in the way of Torres being able to open the trunk by pulling the lever. Cummings struggled to fight against Torres, who placed him "in a chokehold." Torres had a "very tight grip" on Cummings's throat, "probably out of ten, maybe a nine," and it was difficult for Cummings to breathe. Torres's demeanor was "very aggressive" and "angry," and Cummings was "very, very concerned" about Torres's ability to get him into the trunk of the car. He fought his way out of Torres's grip, got into the car, and drove away. Cummings was shocked that Torres came at him so strongly and that what was going on "just came out of nowhere." Cummings "was hurting" after this from the "hard hold on [his] neck." He confirmed being near the "person who had [him]," and he identified Torres from a photo lineup as that person. Torres was apprehended shortly after this incident on Webberville Road where the third event occurred, a head-on collision between his truck and a vehicle with a woman and her young child inside.

Austin Police Department Officer Brandon Swindell was among the officers who responded to the Webberville Road scene. He saw a red truck parked or stuck off the road and near a walkway with multiple people outside. Another police officer was detaining the man on scene who had been in the truck. Officer Swindell identified that man as Torres.

Austin Police Department Detective Patrick Reed investigated the incidents involving the same red truck, spoke with the complaining witnesses, and conducted an interview with Torres. Descriptions of the suspect that the complaining witnesses gave to Detective Reed aligned with each other. During his interview, Torres denied knowing what Detective Reed was talking about but admitted being the operator of the red Dodge Ram pickup truck. Additionally, Torres was identified as the perpetrator from a photo lineup administered on the date of the events involving Zanti, Cummings, and the head-on collision.

5

Torres was convicted and sentenced for attempted aggravated kidnapping. He filed a motion for new trial that was overruled by operation of law. This appeal followed.

**DISCUSSION**

Torres challenges his conviction for attempted aggravated kidnapping, contending that the evidence is insufficient to prove that he had (1) the specific intent to abduct another and (2) the further specific intent to commit an aggravating manner-and-means element set forth in the aggravated-kidnapping statute.

**Standard of review**

We review a challenge to the sufficiency of the evidence by considering whether, after viewing all the evidence in the light most favorable to the verdict, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Romano v. State*, 610 S.W.3d 30, 34 (Tex. Crim. App. 2020). This standard gives full play to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts, *Jackson*, 443 U.S. at 319, and it applies whether the case was proven by direct or circumstantial evidence, *Romano*, 610 S.W.3d at 34; *Laster v. State*, 275 S.W.3d 512, 521 (Tex. Crim. App. 2009). We defer to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 318-19; *see Laster*, 275 S.W.3d at 522.

Jurors may use common sense and apply common knowledge, observation, and experience gained in ordinary affairs when drawing inferences from the evidence. *Garcia v. State*, 667 S.W.3d 756, 762 (Tex. Crim. App. 2023). When the record supports conflicting

6

inferences, we presume that the jury resolved the conflicts in the prosecution's favor and defer to the jury's factual determinations. *Id.* "Our role on appeal is restricted to guarding against the rare occurrence when a factfinder does not act rationally." *Laster*, 275 S.W.3d at 517.

**Attempted aggravated kidnapping offense**

The offense of attempted aggravated kidnapping requires proof that the defendant did an act amounting to more than mere preparation with the specific intent to commit an aggravated kidnapping. *See* Tex. Penal Code § 15.01 (defining criminal attempt); *Laster*, 275 S.W.3d at 521. Relevant here, a defendant commits aggravated kidnapping "if he intentionally or knowingly abducts another person with the intent to . . . facilitate the commission of a felony or the flight after the attempt or commission of a felony."[1] Tex. Penal Code § 20.04(a)(3); *see Laster*, 275 S.W.3d at 521.

"Abduct" means "to restrain a person with intent to prevent his liberation by: (A) secreting or holding him in a place where he is not likely to be found; or (B) using or threatening to use deadly force." Tex. Penal Code § 20.01(2); *Laster*, 275 S.W.3d at 521. Thus, "abduct" requires proof that the defendant (1) restrained another and (2) had the specific intent to prevent liberation. *Laster*, 275 S.W.3d at 521. The "secreting" and "deadly force" referenced in the definition of "abduct" are two alternative types of the specific-intent element. *Brimage v. State*, 918 S.W.2d 466, 476 (Tex. Crim. App. 1994). The State is not required to prove a restraint accomplished by either secreting or deadly force. *Id.* Instead, the State must prove only that a restraint was completed and that the actor evidenced a specific intent to prevent liberation by either secreting or deadly force. *Id.*; *see Laster*, 275 S.W.3d at 521.

---

[1] The indictment specifies "ATTEMPTED AGG KIDNAPPING FACILITATE - PC 20.04(a)(3) - F2," and the judgment lists as the "Statute for Offense: PC 20.04(a)(3)."

7

"Restrain" means "to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person." Tex. Penal Code § 20.01(1). Restraint is without consent when accomplished by force, intimidation, or deception. *Id.* § 20.01(1)(A).

Here, Torres's indictment alleged that he did,

> with the specific intent to commit the offense of Aggravated Kidnapping, of Elijah Akeem Cummings, do an act, namely: grab Elijah Akeem Cummings by the throat AND ordered Elijah Akeem Cummings to get in the trunk of his vehicle, which amounted to more than mere preparation that tended but failed to effect the commission of the offense intended.

**Intent to abduct**

Torres first contends that there is insufficient evidence of his specific intent to abduct Cummings. Under the Penal Code definition of "abduct," Torres's complaint is that there is no evidence showing that he restrained Cummings and evidenced a specific intent to prevent his liberation by either secreting or deadly force. *See id.* § 20.01(2); *Laster*, 275 S.W.3d at 521; *Brimage*, 918 S.W.2d at 476. We disagree.

Absent a confession, a culpable mental state must generally be inferred from the circumstances. *Nisbett v. State*, 552 S.W.3d 244, 267 (Tex. Crim. App. 2018). Intent may be inferred from the accused's acts, conduct, and words. *Id.*; *Laster*, 275 S.W.3d at 524. Moreover, choking someone can constitute the use or threat of deadly force within the meaning of Penal Code section 20.01. *Kenny v. State*, 292 S.W.3d 89, 99 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (concluding that defendant's conduct of placing rope around victim's neck for a few seconds was threat of deadly force).

8

The evidence as to Torres's acts, conduct, and words—when viewed in the light most favorable to the verdict—would have allowed the jury to reasonably infer his intent to abduct Cummings. Torres deliberately hit Cummings's parked car and instigated a physical struggle with Cummings, during which Torres placed him "in a chokehold." Torres had a "very tight grip" on Cummings's throat, "probably out of ten, maybe a nine," and it was difficult for Cummings to breathe. During the altercation, Torres commanded Cummings to get into the trunk, a place where he would have been out of public view and unlikely to be found, particularly if Torres drove the car to another location. Torres was a stranger to Cummings but exhibited a "very aggressive" and "angry" demeanor. Cummings struggled to fight against Torres and was "very, very concerned" about Torres's ability to get him into the trunk of the car. However, because Torres pushed Cummings toward the car door while holding Cummings's neck, Cummings was standing in the way of Torres being able to open the trunk with the lever. Relatedly, the jury could have reasonably inferred that while pushing Cummings and gripping his neck, Torres's hands were occupied and unable to pull the lever that opened the trunk.

Further, the jury could have reasonably inferred Torres's intent to abduct Cummings from the contextual evidence about Torres's acts, conduct, and words directed to Zanti just minutes before. Torres approached Zanti unexpectedly, acted aggressively, and commanded him to get into the trunk. Torres knew the location of the lever that opened the trunk in Zanti's car, which was a Toyota, the same make as Cummings's car. After opening the trunk, Torres took the tire iron, brandished it near Zanti, commanded him to get into the trunk, and threatened to beat him. The jury could have reasonably inferred that Torres had the same specific intent to place Zanti into the trunk, which intent was at some point abandoned, and tried again with the next person he encountered, Cummings, having the same specific intent to make

9

him get into the trunk of his car. Existence of a specific intent to abduct would not be negated if the jury determined that Torres abandoned his specific intent to prevent Cummings's liberation by secreting or deadly force when Cummings managed to free himself from Torres's grip and fled. *See Laster*, 275 S.W.3d at 523 (noting that rational factfinder could infer that defendant's specific intent to secrete or hold victim was formed and thus sufficient to support conviction even if later abandoned); *see also Rodriguez v. State*, 646 S.W.2d 524, 527 (Tex. App.—Houston [1st Dist.] 1982, no writ) (concluding that evidence was sufficient even if defendant abandoned his ultimate plan to abduct victim and shortened period of victim's restraint to few minutes).

Considering the evidence at trial in its entirety and in the light most favorable to the verdict, along with reasonable inferences from that evidence, a rational juror could have found that Torres restrained Cummings and had formed the specific intent to prevent his liberation by either secreting or holding him in a place where he was not likely to be found or by using or threatening to use deadly force. *See* Tex. Penal Code § 20.01(2). Thus, we conclude that there was sufficient evidence at trial supporting the jury's finding that Torres acted with the specific intent to abduct Cummings. We overrule this issue.

**Intent to facilitate commission of felony or flight after attempt or commission of felony**

Torres also contends that there is insufficient evidence of his specific intent to commit an aggravating manner and means in the aggravated kidnapping statute. The aggravating manner-and-means allegation in the indictment is from Penal Code subsection 20.04(a)(3), which states that a person commits the offense of aggravated kidnapping if he intentionally or knowingly abducts another person with the intent to "facilitate the commission of a felony or the flight after the attempt or commission of a felony." *Id.* § 20.04(a)(3).

10

The State had to prove only that Torres abducted Cummings with the specific intent to commit an aggravating element—not that Torres could, or did, actually accomplish this purpose. *See Laster*, 275 S.W.3d at 521, 522-24 (concluding that there was sufficient evidence of attempted aggravated kidnapping where defendant formed intent to take victim when he grabbed her and caused her physical pain when touching her but let go because he feared that he might be caught). The jury may infer intent from the accused's acts, conduct, and words. *Nisbett*, 552 S.W.3d at 267; *Laster*, 275 S.W.3d at 524. And when drawing inferences from the evidence as to whether the specific intent under subsection 20.04(a)(3) was proven, the jury could use common sense and apply common knowledge, observation, and experience gained in ordinary affairs. *See Garcia*, 667 S.W.3d at 762. In this case, the jury was also able to consider Zanti's testimony in determining Torres's specific intent to "facilitate the commission of a felony or the flight after the attempt or commission of a felony" because Zanti's testimony was admitted at trial without limitation as to its purpose. "Once evidence is received without a limiting instruction, it becomes part of the general evidence and may be used for all purposes." *Arrington v. State*, 451 S.W.3d 834, 842 (Tex. Crim. App. 2015) (quoting *Hammock v. State*, 46 S.W.3d 889, 892 (Tex. Crim. App. 2001)).

Torres's acts, conduct, and words towards Zanti and Cummings were similar, including approaching them unexpectedly, showing aggression, and commanding them to get into the trunks of their cars. But with Zanti, Torres also got a tire iron from the trunk, brandished it close enough to hit Zanti, commanded him to get into the trunk or be beaten, and grabbed his glasses off his face without returning them—facts showing a felony offense of aggravated robbery. *See* Tex. Penal Code §§ 29.03(a)(2) (providing that person commits felony of aggravated robbery if he commits a robbery under Penal Code section 29.02 and he "uses or

11

exhibits a deadly weapon"), .02 (providing that person commits felony offense of robbery if, in the course of committing theft and with intent to obtain or maintain control of the property, he intentionally or knowingly threatens or places another in fear of imminent bodily injury or death). Zanti saw Torres leave in the old red truck that had been on Garwood Street with its hood up for repair. Minutes later Torres drove that same recognizable red truck, with its damaged hood "kind of flying open [and] flopping," less than a mile away to Zaragosa Street and tried to get Cummings into the trunk of his car.

From the evidence at trial, the jury could have reasonably inferred that Torres abducted Cummings so that Torres could abandon his truck for a less-recognizable and better-condition vehicle just minutes after committing a felony offense against Zanti less than a mile away. *See Jernigan v. State*, 706 S.W.2d 813, 821 (Tex. App.—Fort Worth 1986, pet. ref'd) (rejecting defendant's contention that there was insufficient evidence of abduction to facilitate flight, assuming that defendant had earlier committed attempted burglary, because that burglary ended three hours before abduction occurred and residence he tried to burglarize was mile away from abduction scene). Alternatively, the jury could have reasonably inferred—as the trial court did when denying Torres's motion for directed verdict—that Torres had the specific intent to steal either Zanti's car or Cummings's car once they were contained in the trunk, especially because the hood of Torres's truck was unsecured and needed repair. *See* Tex. Penal Code § 31.03(a) (providing that person commits offense of theft if he unlawfully appropriates property with intent to deprive the owner of property), (e)(4) (theft is state-jail felony if value of property stolen is between $2,500 and $30,000), (5) (theft is third-degree felony if value of property stolen is between $30,000 and $150,000). Thus, the record contains legally sufficient evidence to support the jury's verdict that Torres had the specific intent to "facilitate the

12

commission of a felony or the flight after the attempt or commission of a felony." *Id.* § 20.04(a)(3).

Considering the evidence at trial in its entirety and in the light most favorable to the verdict, along with reasonable inferences from that evidence, we conclude that a rational jury could have found that Torres acted with the specific intent to facilitate the commission of a felony, such as the theft of Cummings's car, or, alternatively, to facilitate flight after his commission of felony, such as the aggravated robbery of Zanti. Thus, the evidence is sufficient to support either of the jury's findings under Penal Code subsection 20.04(a)(3) as part of its verdict finding Torres guilty of the attempted aggravated kidnapping charged in the indictment. We overrule this issue.

## CONCLUSION

We affirm the district court's judgment of conviction.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Affirmed

Filed: August 14, 2025

Do Not Publish

13